## Webb & Jones v. J. R. Renfrew, *et al.*

(Filed July 30, 1898.)

1. TAXES—*Qualization of.* The territorial board of equalization, in equalizing the taxes between the several counties, may take the returns of any one county, which, in its judgment, most nearly represents the true cash value of all the property therein, as a bas s, and may lower or raise the valuation as returned from any or all of the other counties, so as to make such valuations conform to such basis, notwithstanding that by such action the aggregate valuations of all the counties as returned may be increased or decreased; and a county board may, in like manner, take one township as a basis, and raise or lower the returned valuations of the other townships thereto, notwithstanding such action may increase or decrease the aggregate of valuations returned from the several townships.

2. TAXATION—*Excessive Assessments.* The limit of valuation of property for taxation is the actual cash value thereof. Any assessment of property for taxation in excess of its actual cash value is, to the extent of such excess, void. Where cattle of a taxpayer are of a value not exceeding $10 per head, and the same are, by the assessor,

fraudulently, and for the purpose of causing an excessive tax to be levied thereon, assessed at $17.33 per head, and in equalizng the valuation of such property the county board of equalization increases such valuation 20 per cent., and the territorial board of equalization increases the same 40 per cent., a court of equity has power to relieve from all of such assessment in excess of the actual cash value of the property.

(Syllabus by the Court.)

*Error from the District Court of Woods County; before Jno. L. McAtee, District Judge.*

*Joseph Porter, A. C. Towne* and *George T. Parry,* for plaintiffs in error.

*Sample & Noah,* for defendants in error.

Action by Webb & Jones against J. P. Renfrew and others to enjoin collection of taxes illegally assessed. From the judgment both parties bring error. Reversed. Opinion of the court by

TARSNEY, J.: This case, No. 523, and case No. 526, although brought to this court, docketed, argued, and submitted as distinct cases, are, in fact, cross-appeals from the same judgment. The principal question presented and argued arose upon the action of the court below in overruling the demurrer to the petition of the plaintiff. The demurrer presented the question of the authority of a county board of equalization, in equalizing assessments between the several townships of the county, to increase the aggregate valuation returned, and the authority of the territorial board of equalization, in equalizing assessments between the several counties, to increase the aggregate of valuations returned by the several clerks of the several counties. The authority of the territorial board of equalization is no longer an open question. The case of *Wallace v. Bullen,* (decided by this court July 17,

1896,) 6 Okla. 17, approved and affirmed upon rehearing at the present term, *Id.* 757, is decisive that the action of the territorial board of equalization is not invalid merely because its action results in increasing the aggregate of assessments of the various counties of the Territory over the aggregate of the returns made by the several clerks of the several counties to the auditor.

This case presents the additional question whether the county boards of equalization are restricted to equalizing the valuations returned by the several township assessors, or whether they are empowered, in equalizing assessments between the several townships, to increase the aggregate valuation of the property of the county over the sum of the valuations returned to them by the several township assessors.

Statutes of Oklahoma, 1893, sec. 5621, provides: "The board of county commissioners of each county shall constitute a board, or a majority of the members thereof shall hold a session of not less than two days at the county seat, commencing on the first Monday of June in each year, for the purpose of equalizing the assessment rolls in their county between the different townships." This is the only provision in our statutes relating to the subject. It makes it the duty of the board to hold a session commencing on the first Monday of June in each year, for the purpose of equalizing the assessment rolls between the several townships, without prescribing the mode to be adopted. The Organic Act of this Territory and various provisions of the statutes contemplate and require that property shall be assessed at its true cash value for the purposes of taxation. The county board of equalization is a constituent part of the machinery created to secure the assessment of property at its true

cash value. The statute not providing the method by which the county board shall perform its functions, and not providing limitations or restrictions upon the manner in which it shall exercise its authority, leaves the board to adopt any reasonable and just method, so as to make the valuations of property in the several townships uniform and equal, and so that the burden of taxation may be apportioned equitably among the taxpayers of the several townships, in proportion to the value of their property. (*State v. Thomas*, [Utah] 50 Pac. 615.)

There being in the statutes of this Territory no limitation or restriction upon the methods to be pursued by the county boards in equalizing between the townships different from the restrictions and limitations concerning the methods of the territorial board in equalizing between the several counties of the Territory, upon the authority of *Wallace v. Bullen* we must hold that the county board of equalization has the same authority in equalizing between the several townships of the county that the territorial board has in equalizing between the counties; that such board has the right to determine the value of property; and, if necessary for the purpose of equalization, may raise the value of one township and lower that of another, or may take the returns of any one township, which, in its opinion, most nearly represents the true cash value of property therein, as a basis, and may lower or raise the valuations of all the other townships to that basis, notwithstanding that by such action the total valuation of the property of the county may be increased or decreased. It follows that, unless the action of the county and territorial boards of equalization complained of in this case contravenes some other prin-

ciple of law, the demurrer to the plaintiff's petition should have been sustained and the cause dismissed.

The amended petition of the plaintiffs in this cause alleged that the plaintiffs were, on the 1st day of February, 1895, the owners of 1,500 head of cattle, located in Crowell township, Woods county; that said cattle were assessed by the assessor of that township for that year at the sum of $17.33 per head; that the board of county commissioners of said county of Woods, acting as a board of equalization, increased the aggregate of the valuation for assessment of all the property in said Crowell township 20 per cent.; that the territorial board of equalization increased the aggregate of the returns of the county clerk of Woods county 40 per cent.; that the effect of the action of the county board was to raise the valuation of plaintiff's property from $17.33 per head to $20.79 per head; and that the effect of the action of the territorial board was to raise the valuation of plaintiff's cattle from $20.79 per head, as fixed by the county board, to $29.12 per head; that plaintiff's said cattle were of the actual value of $10 per head on the 1st day of February, 1895; that, although the true actual cash value of said cattle did not exceed $10 per head, the valuation thereof was by the assessor fraudulently wrongfully, and illegally, and for the puropse of increasing the amount of taxes thereon, raised to $17.33 per head, and that $17.33 per head was far in excess of the true value of said cattle. Before the said demurrer had been filed, or by the court overruled, the defendants filed their motion to strike out of said petition all allegations therein contained except those relating to, and which raised the question of the legality of, the action of the boards of county and territorial equalization in increas-

ing the aggregate of the valuations in Crowell township and in Woods county, respectively, which motion was by the court sustained. The plaintiff's duly excepted to the action of the court in that particular, and present the same by their cross appeal to this court for review.

Section 6 of the Organic Act of this Territory provides that    *    *    *    "all property subject to taxation shall be taxed in proportion to its value." Various provisions of the statutes relating to revenue clearly contemplate and require that property subject to taxation shall be listed and assessed at its actual cash value. Every property owner is required to furnish the assessor an itemized account of all classes of property owned or held by him or her which by law is subject to assessment with the true value thereof. If the property owner neglect or refuse to give under oath the statement required, the assessor must ascertain and estimate from the best information he can obtain the number, amount, and cash value of all the several pieces of property required, and list the same accordingly. If any person willfully, under oath, shall place a false value upon property returned to him for taxation, he is to be deemed guilty of perjury. The assessor is required, in his oath attached to his assessment roll, to swear that he verily believes the full value of the property returned is set forth in said assessment roll. All these provisions clearly show that it was the intent of congress and of the legislature of the Territory that the true cash value of property should be the basis of its assessment for the purposes of taxation.

In *Wallace v. Bullen, supra,* after reviewing these various provisions, and the various provisions of the statutes relating to the constitution, scope, and authority of the several boards of equalization, this court says: "These

various provisions and sections provide a comprehensive plan and scheme for the assessment and levy of taxation for the support of the territorial, county, and municipal governments.    Each officer or board has a separate and distinct jurisdiction within which he or it has distinct duties to perform, and for which there is a distinct and clearly-defined authority of law.    These several officers and boards may be said to comprise the machinery of the law for exercising the taxing powers of government. Each must act within the special scope of his or its authority, and when so acting the only limitation that we can discover to the combined authority and jurisdiction of all is that their imposition of taxation must be equal and uniform.    In assessing, they must not fix values higher than the true cash value of the property assessed, and in levying they must not levy a higher rate than that limited by the law.    In other words, the general scope of the jurisdiction and power of the taxing authorities is to impose taxation upon property assessed at its true cash value, and at a rate not exceeding the maximum fixed by law; and when the authorities have proceeded and acted within the scope of their authority as thus defined, and property has not been valued for taxation beyond its true cash value, or a greater rate of taxation levied upon such value than that authorized by law, the owner has not been injured, and cannot be heard to complain, provided his property has been taxed equally and uniformly with other property in the taxing district."

It follows from the reasoning and conclusion of the above that the taxing authorities have no right to fix a valuation for taxation upon the property of a citizen beyond its actual cash value, any more than the citizen has a right to have his property assessed for taxation upon a

valuation less than its actual cash value, and that an
attempt to impose taxation upon property based upon a
fictitious value in excess of its actual cash value,
is without authority of law, is an arbitrary, unwarranted
exercise of the taxing power, and is the taking of the
property of the citizen without due process of law; and
where such valuation is not uniform, but the property of
one citizen is valued much higher than its cash value,
and the property of all other citizens is valued below the
actual cash value, such method is violative of a funda-
mental principle of taxation—that which requires equal-
ity and uniformity in the distribution of its burdens.

The question, then, is, what is the remedy for such
condition when it is shown to exist? In *State v. Thomas,*
*supra,* where the constitution of Utah provided that "the
legislature shall provide by law a uniform and equal rate
of assessment and taxation on all property in the state,
according to its value in money" (art. 13, sec. 3,) the court
held that no board or officer could assess money for more
than its legal value; nor could the state board change
valuation on the assessment roll, when listed at its legal
value; but we are unable to perceive any greater restric-
tive force in such constitutional provision when applied
to the assessment of money than when applied to any
other species of property, the actual or money value of
which can be reasonably and readily ascertained. Cer-
tainly it was not in contemplation of the framers of the
constitution of the state of Utah, nor of the legislature
in enacting our statutes, that money, because it has a
fixed legal value, or is in itself the measure of all values,
should not be assessed beyond such value, while all other
property, because of some inconvenience or difficulty in
ascertaining its exact money value, might be assessed

arbitrarily upon any valuation which assessors or boards might place thereon. It is true, as argued by the learned judge writing the opinion in that case, that the value of all property cannot be determined in the same way that the value of money can; that, because of its dissimilarity, the process by which the judgment was formed must vary, and probably, as to all property except money, perfect equality in valuations and assessments is unattainable, owing to the fallibility of human judgment; but this want of absolute acuracy, this fallibility of human judgment, which makes unattainable perfect equality in measuring valuations of other property with money, should not render nugatory a constitutional or statutory rule made for the protection of the citizen, which guaranties him against an unequal burden in the support of government, by providing that his property shall not be assessed for taxation at a higher valuation than its actual cash value, when there is ample machinery, and human judgment is sufficiently infallible, to ascertain with approximate precision its actual cash value.

Mr. Cooley, in his work on Taxation, (2d Ed. p. 746,) says: "However summarily and apparently arbitrary may be the methods and processes in the levy and enforcement of taxes, they cannot deprive the citizen, when his property is taken by virtue or under pretense thereof, of a trial of the right to take it before some impartial tribunal, to which the public authorities must justify their proceedings. What the tribunal shall be, and what the proper remedy to seek in it, may be determined by either the common or the statute law; but from one or the other, or from equity as an assistant to both, adequate redress for any actual wrong is supposed to be always attainable." Among the wrongs which one may

have occasion to complain of in tax cases, and for which such redress is supposed to be attainable, this author enumerates: "The laying upon him of an excessive or partial assessment, or of imposing inadmissible costs or penalties, and the laying of the tax upon erroneous and inadmissible principles." The part of the plaintiff's petition stricken out showed clearly, in this case, an excessive assessment, and that the tax was levied thereon upon an erroneous and inadmissible principle, if, as we have held, it is inadmissible to levy upon an assessment clearly in excess of the actual value of the property. The amended petition clearly averred that the true cash value of the plaintiff's cattle did not exceed $10 per head. They were valued by the assessor at $17.33 per head, or nearly double their actual cash value. If these allegations in the petition were true, did the trial court have authority to grant relief to the plaintiffs in the premises? It is a general rule that for a merely excessive or unequal assessment, where no principle of law is violated in making it, and the complaint is of an error of judgment only, the sole remedy is an application for an abatement, either to the assessors or to such statutory board as has been provided for such hearings; that courts, either of common law or of equity, are powerless to give relief against the erroneous judgments of assessing bodies, except as they may be especially empowered by law to do so. (Cooley, Taxation, 748.)

It is contended by counsel for plaintiffs in error that defendants in error are not in position to complain that their property was not assessed by the assessor at its true value; that the taxpayer who has any cause of complaint in this respect may make application to the township board of equalization. Section 5620 of the Statutes

of Oklahoma of 1893, providing for a township board of equalization, provides that: "Said boards shall meet on the third Monday in April of each year, to hear all complaints of persons who feel aggrieved at their assessments, and the decisions of said boards shall be final as to individual assessments." It has been uniformly held that assessors are *quasi* judicial officers when acting within the sphere of their jurisdiction, and their assessments, when made, become judgments to be enforced by warrant in the nature of a special execution, but their judgments can be reviewed by action for fraud, mistake, or other cause, giving jurisdiction to courts of equity. (*Railroad Co. v. Nolan*, 48 N. Y. 513, and cases there cited.)

The provisions of section 5620 of our statutes, above quoted, making the decision of the township boards of equalization final as to individual assessments, cannot have the effect of making such decisions final, except in cases where the board was acting within its jurisdiction, and where no principle of law was violated in making it. It cannot have the effect of depriving a party of relief in a court of equity where fraud, mistake, or other cause giving jurisdiction to courts of equity was the basis of such decision. The part of the plaintiffs' petition stricken out, clearly alleging that cattle of the same kind and character as plaintiffs' were assessed by the township assessor of Crowell township at $10 per head; that such assessment was a just and fair asssssment of such property; and that plaintiffs' property was by said assessor fraudulently, wrongfully, and illegally assessed at $17.33 per head, for the purpose of fraudulently and wrongfully increasing the amount of taxes thereon, clear-

ly tendered an issue which, if sustained, entitled the plaintiffs to equitable relief.

Even should we entertain doubts as to whether the plaintiffs, by failing to present their grievance to the township board of equalization, which had power to give relief, are precluded from seeking that relief in this proceeding, yet, if their property did not exceed in actual value $10 per head, and was, by the assessor and board of township equalization, valued at $17.33 per head, we entertain no doubt upon the proposition that the county board of equalization had no lawful authority to increase such valuation 20 per cent., and the territorial board of equalization had no authority to add 40 per cent., or any other amount, to the valuation thereof. Our statutes give no jurisdiction to the county or territorial boards of equalization to act directly upon individual assessments, nor is any provision made for the individual taxpayer to present any matter of grievance relating to his individual assessments to such boards. The law provides no time, place, or manner for the individual taxpayer to show to the county or territorial board that the assessment placed upon his property by the assessor equals or exceeds its actual cash value. He has no right to assume that such boards will perform their duties in such manner as to result in an assessment of his property in excess of its actual cash value, and in violation of law. Therefore, as against such illegal excess of valuation, he is not estopped from complaining. The tax payer is bound to know when the township board of equalization meets; that it has power to correct any error in his assessment; that it is open to hear his complaint; and if he does not present his grievance there, if any exists, he might well be excluded from seeking re-

dress elsewhere. But if he makes honest return of his property at its true cash value, and the assessor and township board of equalization are satisfied with such return, it would be inequitable to permit other boards, in violation of law, to increase such assessment without his knowledge, or an opportunity to be heard, and then deny him relief.

Our conclusion, therefore, is that the court below erred in overruling plaintiffs in error's demurrer to the petition of the defendants in error on the grounds upon which demurrer was overruled; that it also erred in sustaining the motion to strike out parts of the plaintiffs' amended petition; that plaintiffs below had a right to plead and show that the actual cash value of their property did not exceed $10 per head; that said property was fraudulently returned by said assessor for taxation at a valuation of $17.33 per head; that, if such increase was fraudulently, and not merely an error of judgment, upon the part of the assessor, plaintiffs are entitled to relief; that, if, by reason of the action of the county or territorial boards of equalization, the property of plaintiffs is assessed at a valuation exceeding its actual cash value on the 1st day of February of the year for which it is assessed, plaintiffs are entitled to relief to the extent that their taxes were increased by the action of said boards. For the reasons stated, the judgment of the court below is reversed, and this cause is remanded, with instructions to the court below to proceed in accordance with the views herein expressed. Reversed, and remanded for new trial.

McAtee, J., having presided in the court below, not sitting; all the other Justices concurring.