UNITED STATES ex rel. FALL CITY CONST. CO. v. JIMMERSON, County Assessor, et al.

(Circuit Court of Appeals, Eighth Circuit. April 14, 1915.)

No. 4270.

MANDAMUS ☞117—COMPELLING PROPER ASSESSMENT OF PROPERTY FOR TAXATION—CONSTITUTIONAL PROVISIONS.

    Mandamus lies to compel the assessor and equalization officers of a county of Arkansas to act in conformity with Const. Ark. art. 16, § 5, requiring all property subject to taxation to be taxed according to its value, to be ascertained as the General Assembly shall direct and make the same equal and uniform throughout the state, and so determine the true value of the property in the county subject to taxation, and thereby raise sufficient taxes to pay the courthouse contractor, though mandamus may not interfere with the officers in exercising their judg-

·ment in determining true value, and though by assessing the property in the county at full value there will be an inequality and a want of uniformity because of the wrongful act of other assessing officers in fixing value at 50 per cent. of the true value.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 249; Dec. Dig. ☞117.]

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Mandamus by the United States, on the relation of the Fall City Construction Company, against W. F. Jimmerson, as Assessor of Monroe County, and others, as members of the Board of Equalization of said county. There was a judgment dismissing the petition for the writ, and the relator brings error. Reversed, and cause remanded, with instructions to grant the writ prayed for.

F. Wm. Kraft, of Chicago, Ill. (G. W. L. Smith, of Brewton, Ala., on the brief), for plaintiff in error.

Thomas & Lee, of Clarendon, Ark., and C. F. Greenlee, of Brinkley, Ark., for defendants in error.

Before HOOK and CARLAND, Circuit Judges, and AMIDON, District Judge.

CARLAND, Circuit Judge. The relator filed its petition for a writ of mandamus in the court below, and an alternative writ was thereupon issued. The defendants in error filed a demurrer to the petition for the writ, which was overruled. Defendants in error then amended their response, and the relator demurred thereto, and its demurrer was overruled, whereupon relator elected to stand upon the demurrer, and judgment was thereupon entered dismissing the petition for the writ. The petition alleged the following facts:

"That on or about the 17th of October, 1911, said relator entered into a contract with Monroe county, in the state of Arkansas, and the county court of said county, for the construction for said county of a county courthouse in the city of Clarendon, Arkansas, the county seat of said county, for a consideration of $118,000, a copy of which contract is hereto attached, marked Exhibit 'A,' and made a part of this petition.

"That said contract provided that said county courthouse should be constructed in accordance with certain plans and specifications mentioned and referred to in said contract, and that the consideration or contract price should be evidenced by county scrip to be issued to relator to the amount of $118,000, to be redeemed in lawful money of the United States in annual installments as follows:

| | |
|---|---|
| July 15, 1912 | $11,500.00 |
| July 15, 1913 | 11,270.00 |
| July 15, 1914 | 11,380.00 |
| July 15, 1915 | 11,460.00 |
| July 15, 1916 | 11,510.00 |
| July 15, 1917 | 11,530.00 |
| July 15, 1918 | 11,520.00 |
| July 15, 1919 | 11,480.00 |
| July 15, 1920 | 11,410.00 |
| July 15, 1921 | 11,810.00 |
| July 15, 1922 | 2,650.00 |
| One warrant on demand | 480.00 |

"That said county courthouse was constructed and completed by relator and accepted by said county, and all of said county scrip was issued and delivered to relator in accordance with the terms of said contract.

"That said county failed and refused to redeem the $11,500 of said county scrip which became due on July 15, 1912, and thereupon suit was instituted in this court by relator against said Monroe county on $3,920 of said scrip which became due July 15, 1912, including said warrant for $480 on demand, and on March 12, 1913, judgment was rendered by this court in favor of relator against said Monroe county for said sum of $3,980, which judgment remains wholly unpaid, and said Monroe county refuses to pay the same or any part thereof, after demand being made for the payment thereof.

"That besides the county scrip issued to relator as above set out, other scrip has been issued by said Monroe county largely in excess of its revenues, and all county taxes are paid in such scrip.

"That on account of the issuance of such other scrip by said county in excess of its revenues and the payment of county taxes in county scrip, it would be ineffectual to attempt to enforce payment of said judgment by mandamus to the county levying court of said county to require it to levy a special tax on the taxable property of said county for the purpose of paying said judgment.

"That the defendant W. F. Jimmerson is the duly elected, qualified, and acting assessor of said Monroe county, and the defendants R. B. Hall, H. A. Baggott, and D. R. Meadors are the members of the board of equalization of said county and constitute said board.

"That it is the duty of said assessor to assess or value, for purposes of taxation, all the real and personal property subject to taxation in said county, except certain property which is assessed or valued for taxation by the state board of railroad commissioners or the state tax commission, at its true value on money.

"That it is the duty of said board of equalization to equalize the assessments made by the assessor, by increasing the assessments of any and all property that may have been assessed or valued by said assessor at less than its true value, and by decreasing the assessments of any and all property that may have been assessed or valued by said assessor at more than its true value.

"The said relator alleges that the said assessor has failed, refused, and neglected to discharge his duty in that he has failed and neglected to assess and value for taxation and place upon the assessment books of said county for the year 1912 a great deal of property, principally personal property, subject to taxation in said county and to assessment by him, and has assessed or valued almost all the taxable property in said county actually assessed and placed upon the assessment books by him for said year at less than its true value.

"That said board of equalization has failed and refused to discharge its duty, in that it has failed and refused to increase the assessments of property undervalued by said assessor as above stated to the true value of said property.

"That the undervaluation of the taxable property of said county by the said assessor and board of equalization, as hereinbefore alleged, is a fraud upon relator as a creditor of said county, and is a refusal of said assessor and said board of equalization to discharge their duties according to law.

"That if the taxable property of said county were assessed at its true value, as required by law, the revenues of said county, even at the low rate of taxation allowed by the laws of the state of Arkansas, would very soon be sufficient to discharge the said judgment and the other indebtedness of said county to relator, in addition to paying the ordinary and usual expenses of said county.

"That, if the taxable property of said county is not assessed at its true value as required by law, relator will be unable to collect its said judgment against said county and the other indebtedness of said county to relator.

"That, unless required by authority of this court to discharge their duties according to law, said assessor and board of equalization will continue to undervalue the taxable property in said county subject to taxation by said

assessor, and thus defeat relator in the collection of its said judgment and other indebtedness of said county to it.

"That the total value of the taxable property in said county as assessed in the year 1912 is $5,769,114, whereas, if the same were assessed at its true value in money, as required by law, the total valuation thereof would be not less than $15,000,000."

The petition then prayed for a writ of mandamus commanding said assessor to assess and value for the year, 1913, and all subsequent years until said judgment and all other indebtedness of said county to relator shall have been fully paid, all of the taxable property of said Monroe county subject to assessment by said assessor at its true value in money as required by law, and also commanding said board of equalization to increase the assessment of all the property that might be undervalued by said assessor to the true value of said property in money, to the end that all of the taxable property of said county subject to assessment by said assessor be assessed at its true value. The following stipulation was contained in the contract:

"It is further agreed and declared that the actual value of the total taxable property in said county in the year 1911 is probably about $24,000,000 or more, and that the assessed value of the county is $6,000,000, and that hereafter said county, by its proper authority, will, if necessary, increase the courthouse building tax, or the assessed valuation of the county, to the full market value of the taxable property of said county as provided by law, and maintain such tax or said increased assessment from year to year in such manner as to enable the county to pay said warrants promptly and without delay."

The names of A. Flora, T. T. Bateman, and Dave Dial were substituted as the members of the board of equalization in place of the members named in the petition. The amendment to the response contains the only defense made against the allowance of the writ. It is as follows:

"That said W. F. Jimmerson, as assessor for Monroe county, assessed all the real and personal property in Monroe county to be assessed by him at an amount equal to the assessment made by the Arkansas tax commission on railroad property, telephone property, Pullman car property, and other public utilities subject to be assessed by said Arkansas tax commission in Monroe county, and that he has fully performed his duty as such assessor by assessing property in Monroe county at the same rate and on the same basis as similar property in other counties in the state of Arkansas has been assessed. That said Arkansas tax commission assessed the property subject to be assessed by it, to wit, said railroad property, telephone property, and Pullman car property, at 50 cents on the dollar of the true valuation thereof, and that the real and personal property in all other counties in the state has been assessed at 50 cents on the dollar, or in a sum not exceeding 50 cents on the dollar, of the true valuation thereof, and that said assessor assessed all the property in Monroe county subject to be assessed by him at 50 cents on the dollar of the true valuation thereof. He says that in following the instructions and advice of the Arkansas tax commission he assessed all property subject to be assessed by him in Monroe county, real and personal, at 50 cents on the dollar of the true valuation thereof, and by so doing he complied with section 5, article 16, of the Constitution of the state of Arkansas by assessing property for taxes in Monroe county equal and uniform with other similar property assessed throughout the state of Arkansas, which similar property and also railroad and telephone property and Pullman car property was assessed in all other counties in the state of Arkansas at 50 cents on the dollar of the true valuation thereof. That he assessed the property, real and personal, in

Monroe county, as high or higher than similar property in other counties in the state had been assessed."

It thus appears that the case must be determined upon the allegations of the petition and the amendment; the facts in both having been admitted by demurrer.

Section 5 of article 16, Constitution of Arkansas provides:

"All property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the state. No one species of property from which a tax may be collected shall be taxed higher than another species of property of equal value."

Section 9 of article 16 provides:

"No county shall levy a tax to exceed one-half of one per cent. for all purposes. * * * "

Section 10 of article 16 provides:

"The taxes of counties, towns, and cities shall only be payable in lawful currency of the United States, or the orders or warrants of said counties, towns and cities, respectively."

The following are statutory provisions of the state of Arkansas, and the sections mentioned refer to Kirby's Digest.

Section 6956, provides:

That every assessor, on or before January first succeeding his election, shall take the oath prescribed in section 20, article 19, Constitution of Arkansas.

This oath requires every assessor to solemnly swear that the value of all real and personal property, moneys, credits, investments in bonds, stocks, joint stock companies, of which statements may be made to him by persons required to do so by law, will be appraised at its actual cash value.

Section 6970 prescribes the form of the oath which the assessor shall attach to his return, and by this oath he is required to swear that the property therein mentioned is not appraised at less than its true value in money.

Section 6974 provides that each separate parcel of real property shall be valued at its true market value in money, and that the price at which real estate would sell at auction, or at a forced sale, shall not be taken as a criterion of such true value; that personal property of any description shall be valued at the usual selling price of similar property at the time of listing; that investments in bonds, stocks, joint-stock companies, or otherwise, shall be valued at their value in money.

Section 7004 provides that the board of equalization of each county, in the equalization of real property not previously entered for taxation on the tax books as then listed, shall raise the value of such tracts and lots of real property as in the opinion of the county board has been returned below their real value in money to such price or sums as it may find to be the true value thereof, agreeably to the rules prescribed by law for the valuation of real property, or may reduce the valuation of such tracts or lots as in the opinion of the board have been returned above their true value as compared with the average valuation of the real property of such county.

Section 7008 provides that the clerk shall lay before the board of equalization the returns of real property made by the assessor, and said board shall immediately proceed to equalize the valuation of such real property, so that each tract or lot shall be entered on the tax books at its true value in money, and for this purpose the board shall raise the valuation of such tracts as in the opinion of the board have been returned below their true value to such price or sum as may be deemed to be their true value. The board shall also reduce the valuation of such tracts or lots as in the opinion of the board have been returned above their true value, as compared with the average valuation of the real property of the county.

Section 12 of Act 257 of 1909 provides that the Arkansas tax commission shall meet as a state equalization board of taxes annually; that it shall examine and compare the returns of the assessment of property in the several counties of the state, and proceed to equalize the same, so that all taxable property in the state shall be assessed at its true value. They shall be governed by the following rules:

First. They shall add to the aggregate valuation of the real property of every county which they believe to be valued below its true and full value in money such per centum in each case as will bring the same to its true and full value.

Second. They shall deduct from the aggregate valuation of the real property of every county, which they believe to be valued above its true and full value, such per centum in each case as will reduce the same to its true and full value.

Fourth. They shall add to the aggregate valuation of any class of personal property of any county, township, village or city which they believe to be valued below the true and full value thereof, such per centum in each case as will raise the same to its true, full, and proportionate value.

Fifth. They shall take from the aggregate valuation of any class of personal property in any county, town, township, village, or city, which they believe to be valued above the true and full value thereof, such per centum as will reduce the same to its true, full, and proportionate value.

The Arkansas tax commission assesses for taxation railroad property, telephone property, Pullman car property, and other public utilities.

Section 12 of Act 251 of 1911 provides that if in the opinion of the tax commission the valuations fixed by railroads or other corporations is the true and full value in money of the property listed, the commission shall accept said valuation and appraise the property at same. If the commission shall be of the opinion that the valuation fixed in any statement is below the true and full value in money of the property, it shall fix the value in each such case at a sum which it believes to be the true and full value of the property in money.

It must be admitted that the Constitution of Arkansas and the legislation enacted thereunder, beyond all question, requires all officers of the state having anything to do with the assessment and equalization of property for taxation in the state of Arkansas to assess and equalize it at its true value in money. It will certainly not be contended by any one that any officer or board of the state is above the law or can act lawfully in defiance thereof. It is the plain duty under the Constitution and laws of the state for each assessor and board of equalization to assess and equalize property subject to taxation accord-.

ing to its true value in money. The relator asks that the performance of this duty may be compelled by mandamus. There seems to be no contention by counsel that the writ of mandamus may not be issued to compel the performance of a plain duty which the party commanded has lawful authority to do. The only argument that seems to be presented is that which is disclosed by the return to the alternative writ. This, stated in a few words, is that the assessor for Monroe county assesses the property in that county subject to be assessed by him at 50 cents on the dollar or in a sum not exceeding 50 cents on the dollar of the true valuation thereof. This is admitted. It is alleged that the Arkansas tax commission so assessed property subject to its jurisdiction. The assessor says that, in assessing property in Monroe county at 50 cents on the dollar of the true valuation thereof, he is complying with section 5, article 16, Constitution of Arkansas, by assessing property for taxes in said county equal and uniform with other similar property assessed throughout the state of Arkansas. Thus we have, as the only justification for not assessing property subject to taxation in Monroe county at its true value in money, the excuse that if the assessor did so he would assess property higher than it is assessed in the other counties of the state, and therefore the equality and uniformity prescribed by the Constitution would be violated. There certainly is nothing which inheres in the 50 per cent. valuation which makes it more liable to be uniform and equal than any other per cent.

If the assessing and equalizing officers may assess and equalize the value of property in Monroe county of the state of Arkansas at 50 cents on the dollar, they may with like reason and authority assess and equalize it at 5 per cent. or 10 per cent., and having adopted such illegal and unlawful valuation they may contend that it cannot be changed by the courts for fear of violating the uniformity and equality clause of the Constitution. We cannot adopt such reasoning. Uniformity and equality are not the only commands of the Constitution and laws of Arkansas. There is the further command that property must be assessed and equalized for taxation at its true value, and the equality and uniformity required must be worked out by giving this true value to each parcel of property subject to taxation. Moreover, it is not the writ of mandamus, if it shall issue in this case, which violates the equality and uniformity required by law in the assessment and equalization of property for taxation, but the unlawful acts of the assessors and boards of equalization, which in defiance of law have illegally assessed property at half its value.

It is contended that this case is ruled by Ex parte Ft. Smith & Van Buren Bridge Co., 62 Ark. 461, 36 S. W. 1060. It is claimed that the precise question was decided by the Supreme Court of Arkansas in that case contrary to the contentions of the relator in this case. Let us see if this is so. The bridge company owned a bridge over and across the Arkansas river, one-half of which was in Sebastian and the other in Crawford county, Ark. The assessor assessed the half of the bridge in Crawford county for the year 1895 at $150,000. The bridge company asked that the assessment be reduced to $75,000. There was

an appeal, and the case finally reached the Supreme Court. It was practically conceded that the sum of $150,000 would not have been in excess of a fair valuation of the half of the bridge assessed in Crawford county. The Supreme Court decided:

"As the assessment of the real property of Crawford county was purposely equalized at one-half of its market value, so the valuation of one-half of the bridge of appellant should have been reduced by the county court to $75,000 as the owner requested; that being fully as much as or more than one-half of its market value."

What the court decided was that, if the assessor in any particular county uniformly assessed property at 50 cents on the dollar of its true valuation, he could not single out a bridge company, or some particular taxpayer, and assess its or his property at its full value. Whether the assessor of Crawford county had a right to assess property at 50 per cent. of its value was not in question. What would become of the Constitution or the laws of Arkansas in regard to the assessment and equalization of property for taxation if the assessors and equalizing boards could agree together to assess all property at 10 per cent. of its value in money, and that any attempt to question such action should be met successfully by the claim that to do so would violate the equality and uniformity clause of the Constitution. To sustain such a position would make the Constitution and the laws of the state, which were enacted and passed to secure an equal distribution of the burdens of taxation, the instrumentalities to defeat their own object and purpose. The argument is unsound, and is neither sanctioned by law nor justice.

This court in Huidekoper v. Hadley et al., 177 Fed. 1, 100 C. C. A. 395, 40 L. R. A. (N. S.) 505, directed that a mandamus issue in a somewhat similar case. It is true there were allegations in that case that the acts of the assessors and officers having in charge the collection of taxes were committed intentionally and fraudulently in order to prevent the assessment and collection of taxes, and there are no such allegations in the petition in this case. But in a case like the one at bar the question is: Is there a plain duty required of the defendants in error by law which they refuse to perform to the damage of the relator? It is not material whether their acts are committed with intent to defraud the relator or not. The defendants have no discretion under the law as to the valuation they shall put upon property for taxation. Of course, they may exercise their judgment in determining what the true value of property is, and this court cannot interfere with the exercise of that judgment; but it can, and ought to, compel them to act in accordance with the undisputed law of Arkansas. There is no claim here that defendants in error have or intend to assess property at its true value.

The case of Taylor et al. v. Louisville & Nashville R. R. Co., 88 Fed. 350, 31 C. C. A. 537, does not rule this case, but is in line with the Van Buren Bridge Company Case, supra. It was held in the Taylor Case that under the Tennessee Constitution of 1870, declaring that all property shall be taxed "according to its value," to be ascertained as the Legislature shall direct, "so that taxes shall be equal and uniform throughout the state," when it is the uniform practice in the various

counties of the state to assess real property at not exceeding 75 per cent. of its true value an assessment upon railroad property at its full value, violates the constitutional provision in regard to uniformity, and the tax will be enjoined. The following cases illustrate and sustain the power of the court to issue mandamus in cases similar to the one at bar: Webb v. Renfrew, 7 Okl. 198, 54 Pac. 448; State Board of Equalization et al. v. People of the State of Ill. ex rel. Goggin et al., 191 Ill. 528, 61 N. E. 339, 58 L. R. A. 513; Chicago & N. W. R. Co. v. Board of Sup'rs of Boone County, 44 Ill. 240; Hicks, County Auditor, et al. v. Cleveland, 106 Fed. 459, 45 C. C. A. 429 (Circuit Court of Appeals, 4th Circuit); Cunningham v. City of Cleveland, Tenn., et al., 152 Fed. 907, 82 C. C. A. 55; City of Cleveland et al. v. United States, 166 Fed. 677, 93 C. C. A. 274; St. Louis Nat. Bank v. Marion County, 72 Ark. 27, 79 S. W. 791; City of Little Rock et al. v. United States ex rel. Howard et al., 103 Fed. 418, 43 C. C. A. 261 (Circuit Court of Appeals, 8th Circuit).

If Monroe county can contract with the relator to build a courthouse for the use of its people, accept the same, and then refuse to pay for it on the ground that in violation of the Constitution and laws of Arkansas it is assessing property for taxation at only 50 per cent. of its true value, then are courts of justice established for no purpose.

We think the relator is entitled to his writ. The judgment below therefore is reversed, and the case remanded, with instructions to grant the writ prayed for.