UNITED STATES ex rel. PIERCE v. CARGILL, County Assessor, et al.

(Circuit Court of Appeals, Eighth Circuit.   March 4, 1920.) .

No. 5451.

1. COURTS ⊙═370—DECISION CONSTRUING STATE LAWS ADHERED TO IN DETERMINING RIGHTS ARISING BEFORE CONTRARY DECISION BY STATE COURT.

Where the Circuit Court of Appeals, in advance of any authoritative decision by the Arkansas Supreme Court, construed the Constitution and statutes of that state as requiring assessment of property for taxation at its full value, it.will adhere to such decision, notwithstanding a later decision of the Arkansas court to the contrary, in determining rights of a creditor of a county obtaining a judgment on warrants issued by the

county and purchased by him subsequent to the decision of the Circuit Court of Appeals and prior to the decision of the state court, especially where the court doubts the correctness of the decision of the state court.

2. CONSTITUTIONAL LAW ☞82—CONSTITUTIONAL PROVISION AS TO EQUALITY AND UNIFORMITY OF TAXATION NOT SELF-EXECUTING.

The provision of Const. Ark. art. 16, § 5, requiring all property to be taxed according to its value in such manner as the General Assembly shall direct, making it equal and uniform throughout the state, is not self-executing.

3. COURTS ☞370—FEDERAL COURT, CONSTRUING STATE STATUTES ON ASSUMPTION THAT THERE WAS NO STATE DECISION, IS NOT BOUND BY SUBSEQUENT DECISION.

Where the Circuit Court of Appeals construed the state Constitution and statutes relating to the assessment of property for taxation on the correct assumption that the state Supreme Court had not decided the question, a subsequent decision of the state court, declaring the question settled by previous decisions, is not controlling.

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Mandamus by the United States, on the relation of Frank Pierce, against H. W. Cargill, as Assessor of Van Buren County, and others. Judgment for defendants (258 Fed. 458), and the relator brings error. Reversed and remanded, with instructions.

Thomas S. Buzbee and G. B. Rose, both of Little Rock, Ark. (George B. Pugh, H. T. Harrison, W. E. Hemingway, D. H. Cantrell, and J. F. Loughborough, all of Little Rock, Ark., on the brief), for plaintiff in error.

U. S. Bratton, of Little Rock, Ark., and J. F. Koone, of Clinton, Ark. (Guy C. Bratton, of Little Rock, Ark., on the brief), for defendants in error.

Before SANBORN and CARLAND, Circuit Judges, and VAN VALKENBURGH, District Judge.

CARLAND, Circuit Judge. This is a proceeding wherein the relator prayed for a writ of mandamus commanding the assessor of Van Buren county, Ark., and the Arkansas tax commission to assess and value, for the year 1919 and subsequent years, until relator's judgment should be fully paid, all the taxable property in said county subject to taxation at its true value in money. The case was heard by the court below upon the pleadings and certain stipulated facts. The relief prayed for was denied, and relator has removed the case here, assigning error as to the ruling of the court in refusing to declare the law to be as announced in the decision of this court in U. S. ex rel. Fall City Construction Co. v. Jimmerson, 222 Fed. 489, 138 C. C. A. 85, L. R. A. 1918B, 1102, certiorari denied October 25, 1915, 239 U. S. 641, 36 Sup. Ct. 163, 60 L. Ed. 482. The petition of relator alleges the following facts:

"That the county of Van Buren, in the state of Arkansas, prior to the 16th day of August, 1917, for a valuable consideration, duly issued its certain warrants payable out of its general revenue fund, and $14,320.25 of these warrants were acquired by the relator for a like valuable consideration.

"That on said 16th day of August, 1917, relator brought suit at law upon said warrants in this honorable court, and such proceedings were had in said

cause that on the 17th day of October, 1917, judgment was rendered in favor of the relator for the total amount of said warrants, to wit, $14,320.25, with costs, which judgment is still in full force, unpaid, and unreversed.

"That in addition to the warrants issued to relator, as above set out, other warrants have been issued by said Van Buren county, largely in excess of its revenue, and all county taxes are payable in such warrants.

"That the respondent H. W. Cargill is the duly elected, qualified, and acting assessor of Van Buren county.

"The respondents Reuben G. Dye, A. C. Martineau, and Monroe Smith constitute the Arkansas tax commission.

"It is the duty of said assessor to assess or value, for purposes of taxation, all the real and personal property subject to taxation in said county, except certain property which is assessed or valued for taxation by the Arkansas tax commission, at its true value in money.

"It is the duty of said Arkansas tax commission to assess all other property in said county at its true value in money, and it is the further duty of said Arkansas tax commission to direct the assessor in the assessment of property in said county, and to require said assessor to assess all property in said county at its true value in money.

"That the said assessor has failed, refused, and neglected to discharge his duty, in that he has failed and neglected to assess and value for taxation, and place upon the assessment books of said county, a great deal of property, principally personal property, subject to taxation in said county and to assessment by him, and his assistants, and has assessed or valued almost all of the taxable property in said county, actually assessed and placed upon the assessment books by him, at less than its true value, and unless otherwise commanded by order of this court will assess all of said property for the year 1919 at less than its true value.

"Said Arkansas tax commission has failed and refused to discharge its duty, in that it has failed and refused to direct the assessor of said county to assess said property at its true value, or to increase the assessment of property undervalued by said assessor to the true value of said property. On the contrary, it has directed said assessor to assess the said property at not more than 50 per cent. of its true value, and unless otherwise commanded by order of this court will not assess, or cause the assessor to assess, said property at more than 50 per cent. of its true value for the year 1919.

"The undervaluation of the taxable property of said county by the said assessor and the Arkansas tax commission, as hereinbefore alleged, is a fraud upon relator as a creditor of said county, and is a refusal of said assessor and said Arkansas tax commission to discharge their duties according to law.

"If the taxable property of said county were assessed at its true value, as required by law, the revenues of said county, even at the low rate of taxation allowed by the laws of the state of Arkansas, would very soon be sufficient to discharge the said judgment and the other indebtedness of said county, in addition to paying the ordinary and usual expenses of said county.

"If the taxable property of said county is not assessed at its true value as required by law, relator will be unable to collect its said judgment against said county.

"Unless required by authority of this court to discharge their duties according to law, said assessor and Arkansas tax commission will continue to undervalue the taxable property in said county subject to taxation by said assessor, and thus defeat the relator in the collection of his judgment.

"The total value of the taxable property in said county, as assessed for the year 1918, is approximately $2,200,000 and will be approximately the same amount for the year 1919, if assessed on the present basis; whereas, if the same were assessed at its true value in money, as required by law, the total valuation would be not less than $4,400,000.

"Said county has no means to pay the within judgment, except by the application thereto of a portion of the proceeds of its general revenue tax of 5 mills which it is authorized to levy.

"The property of said county has heretofore been assessed at less than half of its true value in money, but, if the assessing officers are required to return said property at its true value in money, it would be at least double the previous income of said county.

"Said 5 mills tax has heretofore been sufficient to pay all the running expenses of said county, even upon the inadequate assessment heretofore made, and when said property has been assessed, as required by law, at its full value in money, 2½ mills will produce as much revenue as said county has enjoyed in the past, and all the revenue required for its legitimate expenses."

The response of respondents contained a denial of certain legal conclusions and alleged as follows:

"Defendants, further responding, say that the assessment of the property of said county by its assessor and his associates at 50 per cent. of its true value, under the direction of the Arkansas tax commission, is and will be in accordance with assessments of other property in all other counties in said state; that the Arkansas tax commission has made an order fixing 50 per cent. of its true value as the proportionate valuation to be assessed on taxable property throughout the state for the purposes of taxation for the year 1919."

Certain facts were stipulated as follows:

"It is agreed between the parties hereto as follows:

"That the warrants on which the judgment, referred to in the petition, was rendered, were issued by the county of Van Buren, and purchased by the plaintiff Frank Pierce, subsequent to the decision of the United States Circuit Court of Appeals for the Eighth Circuit in the case of United States ex rel. Fall City Construction Co. v. Jimmerson, which was rendered April 14, 1915, and is reported in 222 Fed. 489, 138 C. C. A. 85, L. R. A. 1918B, 1102, and prior to the decision of the Supreme Court of Arkansas in case of State ex rel. Nelson v. Meek, which was rendered February 5, 1917, reported in 127 Ark. 349, 192 S. W. 202, L. R. A. 1918F, 642.

"That at the time said warrants were issued by the county and purchased by the plaintiff, Frank Pierce, the decision of the United States Circuit Court of Appeals for the Eighth Circuit in the case of United States ex rel. v. Jimmerson was in full force and effect.

"That the property of Van Buren County, and of other counties in the state, is now assessed, under direction of the state tax commission, at 50 per cent. of its value, and that the revenue derived by said assessment in Van Buren County is not sufficient to enable the county to pay the judgment in favor of plaintiff."

The Jimmerson Case was decided April 14, 1915. On February 5, 1917, the Supreme Court of Arkansas in the case of State ex rel. Nelson v. Meek, 127 Ark. 349, 192 S. W. 202, L. R. A. 1918F, 642, decided that the construction placed by this court upon the Constitution and statutes of Arkansas relative to the assessment of property for taxation in the Jimmerson Case was wrong. The warrants on which judgment was rendered in favor of the relator were issued and purchased subsequent to the decision in the Jimmerson Case, and before the decision in the Meek Case. The decision in the Jimmerson Case was based upon a full citation and consideration of the Constitution and statutes of Arkansas bearing upon the question decided and upon the supposition that the Supreme Court of that state had not prior to that time decided it. As illustrating the position taken by the Supreme Court of Arkansas in the Meek Case, we quote as follows from the opinion of the court:

*"There is no doubt of the power of the Legislature to provide for an assessment based on the full money valuation of property,* not that the Legislature has so provided in the statutes which have been enacted since the adoption of the present Constitution; but it is equally clear that the Constitution itself does not compel an assessment according to full value, *and it does, in fact, leave that matter entirely to the lawmakers. That is the effect of our previous decisions on that subject.*" (Italics ours.)

From this excerpt it appears that there was no doubt in the mind of the court of the power of the Legislature of Arkansas to provide for an assessment based upon the full money valuation of property, but that the Constitution did not compel such legislation. This proposition of the court leads us to remark that whether the Constitution compelled such legislation was immaterial. If it permitted such legislation, it would be valid, and we cannot imagine how in such a case the Constitution could be said to be inconsistent with it. At the time the Jimmerson and the Meek Cases were decided there could have been no question as to what laws had been passed by the Legislature of Arkansas in relation to the assessment of property for taxation. We will cite such laws, commencing with the Constitution. Const. Ark. art. 16, § 5, provides:

"All property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the state."

Section 6956 of Kirby's Digest of the Statutes of Arkansas provides that the assessor shall take an oath that—

"The value of all real and personal property, moneys, credits, investments in bonds, stocks, joint-stock companies, of which statements may be made to me by persons required by law, will be appraised at its actual cash value."

Section 6970 provides that the assessor, in filing his assessment book, shall accompany it with an oath—

"That the property therein mentioned is not appraised at less than its true value in money."

Section 6906 provides that the owner of personal property shall make a list thereof and deliver it to the assessor, accompanied by an oath—

"That I have estimated and put down the value of such property, not at what it might sell for at forced sale, but at what would be its fair market value; so help me God."

Real property in Arkansas is assessed by the assessor, and section 6974 provides as follows:

"Each separate parcel of real property shall be valued at its true market value in money, excluding the value of crops growing thereon; but the price at which such real estate would sell at auction, or at a forced sale shall not be taken as the criterion of such true value. * * * Personal property of any description shall be valued at the usual selling price of similar property at the time of listing."

[1, 2] In view of these statutes the statement of the Supreme Court in the Meek Case, "not that the Legislature has so provided in the statutes which have been enacted since the adoption of the present Constitution," is inexplicable. It would seem that the excerpt quoted

from the opinion of the Supreme Court of Arkansas destroys the basis upon which the opinion of the court is founded. It is not our purpose to carry the discussion in regard to the soundness of the principles announced in the Meek Case to such an extent as to decide that this court would not follow it as to property rights arising after the date of that decision. We stand upon the principle that at the time of the decision of the Jimmerson Case no decision had been made by the Supreme Court of Arkansas in regard to the question involved in that case, and that this court by an original consideration of the Constitution and statutes of Arkansas placed a construction upon such Constitution and laws as was announced in the Jimmerson Case; that the property rights of relator having arisen after the decision of the Jimmerson Case, and while it was in full force and effect, and before the decision in the Meek Case, upon well-recognized principles governing our jurisdiction, it is our duty to uphold the rights of relator so acquired, notwithstanding the decision in the Meek Case, especially in view of our doubts that said decision announces a correct principle of law. This leads us to notice the question before stated as to whether the Supreme Court of Arkansas had, prior to the decision in the Jimmerson Case, decided that it was lawful under the Constitution and laws of Arkansas to intentionally assess property for taxation at 50 per cent. of its true value. We gave this question careful study when the Jimmerson Case was decided, and we have carefully examined it again at this time, and we find no decision of the Supreme Court of Arkansas prior to the Jimmerson Case which decided the question involved in that case.

The Supreme Court of Arkansas in the Meek Case closes the excerpt from its opinion which we have above set forth with these words, "That is the *effect* of our previous decisions on that subject." The "subject" which the court referred to in the above excerpt was that the uniformity clause of the Constitution of Arkansas controlled the full valuation assessment statute, and, if conflicting, the latter must give way. The conflict above referred to is based upon the idea that a 50 per cent. assessment of the value of property assessed for taxation is more equal and uniform than a 100 per cent. assessment. The unsoundness of this position is made to appear at once, when we consider that inherently there is no difference as to equality and uniformity between a 50 per cent. assessment and a 100 per cent. assessment. Equality and uniformity is obtained by applying whatever assessment is made, whether 50 per cent. or any other per cent. of the property of the different taxpayers equally. This very doctrine is exploded by the admission in the opinion that the Legislature could pass such statutes as they did pass, so far as the Constitution was concerned, and not one of the statutes of the state of Arkansas relating to the assessment of taxes is cited or referred to in the Meek Case. Manifestly the Constitution, so far as the subject under discussion is concerned, is not self-executing, and any decision in regard to the assessment of property for taxation, which leaves out of consideration the statutes actually passed by the Legislature and within its power to pass, is certainly an incomplete consideration of the subject. The Supreme Court

of Arkansas, in saying that the decision in the Meek Case was in line with their former decisions, cited Bank of Jonesboro v. Hampton, 92 Ark. 492, 123 S. W. 753. The Supreme Court in its opinion in that case said:

"The only question involved in the appeal is: Did the act of May 12, 1909, creating the Arkansas tax commission, give it the power to raise or lower individual assessments?"

It was decided that it did not. Ft. Smith & Van Buren Bridge Co., Ex parte, 62 Ark. 461, 36 S. W. 1060, was cited. Our opinion in regard to this case and what it decided is stated in the Jimmerson Case, and we see no reason for a contrary view at this time. Drew Timber Co. v. Board of Equalization, 124 Ark. 569, 187 S. W. 942, was also cited. The only question decided in this case was that the board of equalization of Cleveland county discriminated against the timber company so far as its timber lands were concerned. It thus is made clear that in the Bank of Jonesboro Case the only question decided was as to the power of the Arkansas tax commission. In the Van Buren Bridge Company and Drew Timber Company Cases the question was one of discrimination; the validity of the assessment, otherwise not being involved. So the whole claim that, prior to the decision of the Jimmerson Case, the Supreme Court of Arkansas had decided the question there involved, falls to the ground.

[3] We are of the opinion that there is no rule or authority which makes the Supreme Court of Arkansas the final arbiter of what it has decided in a particular case. The opinions are in the English language, and the principles involved are not so esoteric in character as to be beyond the comprehension of the judges of other courts. The principles of law which govern this case have been established for years, and are comprehensively and clearly stated in the case of Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359, as follows:

"We do not consider ourselves bound to follow the decision of the state court in this case. When the transactions in controversy occurred, and when the case was under the consideration of the Circuit Court, no construction of the statute had been given by the state tribunals contrary to that given by the Circuit Court. The federal courts have an independent jurisdiction in the administration of state laws, co-ordinate with, and not subordinate to, that of the state courts, and are bound to exercise their own judgment as to the meaning and effect of those laws. The existence of two co-ordinate jurisdictions in the same territory is peculiar, and the results would be anomalous and inconvenient, but for the exercise of mutual respect and deference. Since the ordinary administration of the law is carried on by the state courts, it necessarily happens that by the course of their decisions certain rules are established which become rules of property and action in the state, and have all the effect of law, and which it would be wrong to disturb. This is especially true with regard to the law of real estate and the construction of state Constitutions and statutes. Such established rules are always regarded by the federal courts, no less than by the state courts themselves, as authoritative declarations of what the law is. But, where the law has not been thus settled, it is the right and duty of the federal courts to exercise their own judgment, as they also always do in reference to the doctrines of commercial law and general jurisprudence. So, when contracts and transactions have been entered into, and rights have accrued thereon under a particular state of the decisions, or when there has been no decision, of the state tribunals, the fed-

eral courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the state courts after such rights have accrued. But even in such cases, for the sake of harmony and to avoid confusion, the federal courts will lean towards an agreement of views with the state courts, if the question seems to them balanced with doubt. Acting on these principles, founded as they are on comity and good sense, the courts of the United States, without sacrificing their own dignity as independent tribunals, endeavor to avoid, and in most cases do avoid, any unseemly conflict with the well-considered decisions of the state courts. As, however, the very object of giving to the national courts jurisdiction to administer the laws of the states in controversies between citizens of different states was to institute independent tribunals, which it might be supposed would be unaffected by local prejudices and sectional views, it would be a dereliction of their duty not to exercise an independent judgment in cases not foreclosed by previous adjudication."

Kuhn v. Fairmont Coal Co., 215 U. S. 349, 30 Sup. Ct. 140, 54 L. Ed. 228, goes over the whole subject and follows the Seligman Case. We have not the least desire to so decide as to come in conflict with the Supreme Court of Arkansas, but in the exercise of our independent jurisdiction in the administration of state laws co-ordinate with, and not subordinate to, that of the state courts, we are bound upon the facts in this case to exercise our own judgment as to the meaning and effect of those laws.

The judgment of the court below is reversed, and the case remanded to that court, with instructions to issue a writ of mandamus as prayed for in relator's petition.