ADAMS EXPRESS CO. v. POE, Auditor of State of Ohio, et al.

(Circuit Court, S. D. Ohio, E. D.    April 23, 1894.)

No. 637.

TAXATION—EXPRESS COMPANIES—NICHOLS LAW.

The "Nichols Law" (Rev. St. Ohio, § 2778a), which provides that the taxable value of the property of express companies doing business within the state shall be based upon the market value of their capital stock, violates Const. Ohio, art. 12, § 2, which requires that the taxation of property shall be "by a uniform rule;" for the value of the capital stock includes good will and other intangible elements of value, which are not taxed as against individuals and other corporations.

This is a suit in equity to enjoin the assessment of a tax, brought by the Adams Express Company, a joint-stock company under the laws of New York, in the name of its president, Henry Sanford, against the state auditor, attorney general, and state treasurer of Ohio. It now comes on for hearing on demurrer to the bill, and on motion by complainant for preliminary injunction.

The main questions at issue are the same as those considered in the opinion just filed in the case of the Western Union Telegraph Company against the same defendants (61 Fed. 449). The bill avers that the complainant prepared and filed with the state auditor a statement, for the year 1893, of the amount of its capital and property, and of its gross receipts, in each county in the state of Ohio, and the aggregate value of its shares, together with a detailed report of all the property owned by the complainant in the state of Ohio, and where located, and the amount at which the same was assessed for taxation; that the defendants, as a board of appraisers, under the Nichols law fixed, in accordance with its requirements, the value of the property of the complainant within the state of Ohio at the sum of $460,033.08; that they threaten to certify the sum to the auditors of the various counties, as directed by the state, after apportioning the amount in the ratio of the gross receipts of complainant from its business in each of the counties to the entire gross receipts in the state; that, unless restrained by an order of this court, the defendants will make such certification to the auditors of 67 counties in which complainant does business, who will at once, as required by the said pretended laws, certify the same to the respective treasurers of each of said counties for collection, where it will be necessary, unless the board is restrained, to bring suits to enjoin the collection of the assessment; that the rate of taxation in Ohio for 1893 varies, according to the county, from 2½ to 3 per cent., so that the aggregate assessment against the complainant upon the illegal and excessive appraisement will amount to between $12,000 and $14,000, and in one or more counties will exceed $2,000; that the complainant owns no line of railroad in the state of Ohio, and that it conducts its business on many lines of railroad under contract with owners of said railroads; that it owns no real estate in said state, except such as is used in stabling its horses owned and used by it in the collection and distribution of goods, wares, and merchandise, and that its personal property in said state consists entirely of office furniture and tools, horses, and wagons: that the total value of its personal property in the state of Ohio does not exceed the sum of $53,500; that it has paid all taxes due upon its real estate within the state to date; that the Nichols law is unconstitutional and void, in this:

that it does not provide a method for the taxation of property according to the true value in money, but is really an attempt to enforce against telegraph, telephone, and express companies the payment of a tax for the privilege of doing business in said state, by placing a fictitious value upon their property, not authorized by the constitution of the state of Ohio; that the scheme of taxation set forth in said alleged law professing to tax property in the state of Ohio does not do so, because it directs the board of appraisers, in ascertaining the value of the property of express companies in Ohio, to be "guided by," and to "determine the value" of the companies' property in said state by, the value of the companies' capital stock; that the value of the companies' capital stock is fixed and determined by the nature, extent, and uses of their property, not only in Ohio, but in many other states of the United States, and by the skill, diligence, fidelity, and success with which their business is conducted in all these states; that complainant employs many thousands of men, who are constantly engaged as messengers in carrying goods, wares, and merchandise from one part of the country to another, and otherwise, and that its income is largely the result of their efforts; that it owns valuable securities of other companies and holds valuable contracts and business arrangements with other corporations, and that all of these, with the good will which it has earned in the course of more than 50 years of service to the public in said business, go to make up the value of the shares of its capital; that the whole number of shares of said company is 120,000, and the market value of said shares, of the par value of $100, each, has ranged from $140 to $150, a price very much above the actual value of all the property of said company; that the law is a tax upon interstate commerce; that the method of taxation, if enforced against it, will destroy the business of complainant in Ohio, and compel it to abandon the said state, to its great and irreparable damage. The prayer of the bill is that a multiplicity of suits may be avoided, and the injury threatened, as above set forth, may be averted, by a preliminary injunction, and that, after hearing, a final injunction shall be granted against the defendants from certifying the appraisements under the Nichols law to the county auditors.

Subsequently, an amendment to the bill was filed, averring the payment of taxes upon the real and personal property of the company in each county in Ohio. An affidavit was filed by the defendants, showing the method by which the appraisement of the defendants was reached. The affidavit shows that the board had the following facts before it: That the number of shares of the capital stock of the Adams Express Company was 120,000. That the market value was from $140 to $150 per share, making the actual amount of 120,000 shares, at $140 per share, $16,800,000. That the total value of the personal property in Ohio of the Adams Express Company, consisting of office furniture, horses, and wagons, was $53,080.74, and that the gross receipts of the business done by the company within the state of Ohio for the year ending the 1st of May, 1893, was $175,034. That the total value of the real estate of the Adams Express Company everywhere was $3,050,272.47, and the total value of the personal property of the company was $1,034,481.43. That in the statement of the Adams Express Company were included reports from 363 offices. That from 2 of these offices the personal property was returned of the value of less than one dollar; from 72 of the offices the personal property in each instance was returned at a value of one dollar; from 51 offices the value of the personal property was returned of over one dollar and under two dollars. That the express company made no returns of safes, pouches, or other personal property used on the railroad lines in the state in the transaction of its business. The affidavit shows, and so do the minutes of the board, that "in arriving at the value of the property of these express companies taxable in Ohio the board did not follow any fixed rule, except the rule that property in Ohio is ordinarily taxed at no more than two-thirds of its actual value, and the law governing this board. The board considered the facts, already stated, set out in the returns and supplementary statements, and also other facts in said returns, and in the testimony of the authorized agents of the companies who appeared before the board. For purposes of comparison, the board examined the gross receipts returned by these companies in preceding years. Taking all the

information the board had or could secure, the value of the capital stock of the company, its gross receipts within Ohio, the return of personal property made, and the character thereof, and evident under-valuation and omission therein, the number of offices, the amount of business done, the nature and value of the property and capital required to carry on such business, and other evidence and information, the board in each instance ascertained what it considered the fair proportion of the property of the company employed by it in Ohio, and fixed the value of the property of such company situate and taxable therein, being guided, in determining the value of the property, by the value of the entire capital stock, and other evidence and information before the board."

Ramsey, Maxwell & Ramsey, for complainant.

J. K. Richards, Atty. Gen., and Thos. McDougall, for respondents.

TAFT, Circuit Judge (after stating the facts as above). The validity of the Nichols law has been considered in the opinion—filed at the same time with this—in the case of the Western Union Telegraph Company against the same defendants (61 Fed. 449), and all the questions of law therein considered are raised by the bill and demurrer and the motion for an injunction in this case. The question of jurisdiction by reason of the amount involved is also the same as in the Western Union Telegraph Company Case. It is admitted that the difference between the aggregate amount of the certifications to the county auditors about to be made by the defendants against the Adams Express Company under the Nichols law, and the amount which that company will pay under previous laws, if the Nichols law is finally held invalid, amounts to $241,918.34, which difference, at the rate of taxation prevailing in Ohio, makes a tax of from $6,000 to $7,000. It is true that in no single county does this tax difference equal or exceed $2,000; but, as already held in the Western Union Telegraph Company Case, I do not think that the difference in any one county is the measure of the amount in controversy in this action. There is very little to add to what has been said in the telegraph opinion. The lack of uniformity in the mode of assessment under the Nichols law with that generally prevailing in Ohio in respect to property of individuals and other corporations is more marked in the case of this complainant than it was in the case of the telegraph company. There is a suggestion in the report of the assessors that the express company did not return all its property, because its return did not include the safes and pouches which must be used in its business. But it is not claimed, and could not be, that the failure to return the safes is an explanation of the difference between $53,000, the amount returned by the company as the value of its property in Ohio, and the $460,000 at which the board has assessed the value of that property. The earning capacity of an express company, which largely determines the value of the shares of its capital stock, is even more dependent than the earning capacity of a telegraph company upon its good will, skill and honesty of its employes, and upon its franchises and other rights and privileges not property. A very important source of the revenues of an express company is the business arrangements which it has with railroad companies, by vir-

tue of which, for a lump sum, fixed annual payments, or percentage of gross receipts, the railroad company permits a particular express company to use its cars for the transportation of its merchandise, and to use its stations, depots, and employes for the transaction of its local business. . It is very doubtful, in my mind, whether such a business arrangement is personal property, to be returned for taxation under the laws of Ohio. It certainly is not real estate, because it gives an express company no interest in the land. It is intangible. The making of such a contract probably involves the personal character, so to speak, of the contracting express company, its good will, and its reputation for honesty and promptness, so that a contract made with it would be inalienable by it. It is certain that express companies have never been required to make returns of such contracts as personal property, and the definition of personal property, as given in section 2730, does not include it, for personal property, as there defined, is as follows:

"The term 'personal property' shall be held to mean and include, first, every tangible thing being the subject of ownership, whether animate or inanimate, other than money, and not forming part of any parcel of real property, as hereinbefore defined; second, the capital stock, undivided profits, and all other means not forming part of the capital stock, of every company, whether incorporated or unincorporated, and every share, portion, or interest in such stock, profits, or means, by whatsoever name the same may be designated, inclusive of every share or portion, right, or interest, either legal or equitable, in and to every ship, vessel, or boat, of whatsoever name or description, used or designed to be used either exclusively or partially in navigating any of the waters within or bordering on this state, whether such ship, vessel, or boat shall be within the jurisdiction of this state or elsewhere, and whether the same shall have been enrolled, registered, or licensed at any collector's office, or within any collection district in this state or not; third, the money loaned on pledge or mortgage of real estate, although a deed or other instrument may have been given for the same, if between the parties the same is considered as security merely."

Such contracts or business arrangements would seem to be more nearly included as "credits," which are defined by the same section as follows:

"The term 'credits' shall be held to mean the excess of the sum of all legal claims and demands, whether for money or other valuable thing, or for labor or service due or to become due to the person liable to pay taxes thereon, including deposits in banks or with persons in or out of this state, other than such as are held to be money, as hereinbefore defined, when added together (estimating every such claim or demand at its true value in money), over and above the sum of legal bona fide debts owing by such person."

And yet it is doubtful whether the right to enforce a contract unexecuted on either side could be said to be a legal demand for services due or to become due. However this may be, even if the value of such contracts were taxable as property in Ohio, there still would remain the good will of the business, the skill and experience of the officers, the discipline among, and honesty of, the employes of the company, which contribute so largely to the earnings, and yet are not taxable property in Ohio.

The suggestion is made that the return of the company is an undervaluation, because no personal property, or a very small amount, is returned from any offices of the company in Ohio. I do not know why

that should indicate undervaluation, because it plainly grows out of the fact that, at the many small stations along the lines of the railroad upon which the express companies operate, the express company uses the office furniture and the office of the railroad company, and has no property of its own. There was in this case no mileage basis for the distribution of the capital stock, and the board of appraisers are unable satisfactorily to explain the basis upon which they affixed, to property returned by the express company as worth $53,-000, an additional value of over $400,000, except that in reaching this additional value they considered the gross receipts of the company in Ohio, and the market value of its entire capital stock, and other evidence and information. This only confirms the conclusion reached in the case of the telegraph company, that the board construed the Nichols law to mean that there should be apportioned to the state of Ohio for taxation, as property within the state, a fair share of the aggregate market value of the capital stock of the company.

It is very true, as said by the supreme court in the case of Express Co. v. Seibert, 142 U. S. 339, 12 Sup. Ct. 250, that the tangible value of express companies is in a very small ratio to the protection which they receive from the government of the state, and therefore that it is entirely just that their burdens of taxation should not be proportioned to the visible tangible property upon which they may be taxed. But the difficulty in Ohio is that, under the constitution, the property of the corporations and individuals must be taxed by a uniform rule, and the inequalities of taxation produced by the fact that large earnings are made by corporations with small tangible property cannot be obviated by affixing to the property of such corporations a fictitious value, plainly not based on the true value of it in money. The tax must be imposed on something other than property.

The same order of injunction will be made in this case which was directed in the case of the telegraph company. As, under the old law, the taxes paid by the express companies were proportioned to the gross receipts in each county, and the same method of distribution is prescribed under the Nichols law, it is apparent that the complainant will not have to pay, under the old law, any more taxes in any particular county than it would have to pay under the Nichols law. For this reason, the order of injunction will cover the certifications to all the counties, and will be made conditional on the complainant's paying the taxes on its gross receipts from business done within the state of Ohio in each county for the year ending May 1, 1893, with interest and penalty, and, when an amendment to the bill showing such payments has been filed, the demurrer will be overruled; otherwise, and unless this amendment is filed within 10 days, the bill will be dismissed.