## ATLAS PORTLAND CEMENT CO. v. HAGEN.*

### (Circuit Court of Appeals, Eighth Circuit.   May 12, 1916.)

### No. 4544.

1. COURTS ☞366(1)—RULES OF DECISION—FEDERAL COURTS.
   The decisions of the state courts, construing state statutes, are binding on the federal courts.

   [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 956, 957, 967; Dec. Dig. ☞366(1).]

2. MASTER AND SERVANT ☞204(2), 228(2)—INJURIES TO SERVANT—ASSUMPTION OF RISK.
   Under Rev. St. Mo. 1909, § 7828, declaring that the belting, shafting, machines, machinery, etc., in all manufacturing establishments, when placed so as to be dangerous to employés, shall be safely and securely guarded, when possible, and, if not, notice of the danger shall be conspicuously posted, an employé does not assume the risk of injury resulting from the employer's failure to comply with the statute, and advantage of such defense cannot be taken on the ground that assumption of risk becomes contributory negligence, for one defense is based on contract and the other on tort, and as an employé does not assume the risk of a master's negligence, there can be no assumption of risk, as a violation of the statute is negligence.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 545, 671; Dec. Dig. ☞204(2), 228(2).]

3. APPEAL AND ERROR ☞1067—REVIEW—HARMLESS ERROR.
   Where the pleadings and evidence were such that the court might have instructed the jury as to the existence of a particular fact, the failure to submit to them the question of that fact's existence was not error.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4229; Dec. Dig. ☞1067; Trial, Cent. Dig. § 475.]

4. MASTER AND SERVANT ☞297(3)—INJURIES TO SERVANT—ESSENTIALS TO RECOVERY.
   Where an injured employé based his action on the master's violation of Rev. St. Mo. 1909, § 7828, requiring the guarding of machinery or the posting of warnings, it is essential to recovery that the jury find failure to guard or to post warnings was the cause of the injury.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1197; Dec. Dig. ☞297(3).]

5. MASTER AND SERVANT ☞293(6)—INJURIES TO SERVANT—INSTRUCTIONS—SUFFICIENCY.
   In such case an instruction that if the statutory directions were obeyed the master was not liable, but if they were not obeyed then the master was guilty of negligence, rendering him responsible for all injuries directly caused by such failure, saving the defense of contributory negligence, was sufficient, in the absence of a request for a more detailed instruction.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1149; Dec. Dig. ☞293(6).]

6. TRIAL ☞256(9)—INSTRUCTIONS—REQUESTS.
   Where an ample general instruction on contributory negligence was given, defendant, who requested no additional instructions, cannot complain that the one given was not sufficiently inclusive.

   [Ed. Note.—For other cases, see Trial, Cent. Dig. § 637; Dec. Dig. ☞256(9).]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied September 4, 1916.

**7. MASTER AND SERVANT** ☞92(1)—INJURIES TO SERVANT—LIABILITY OF MASTER.

Where a master supplied a physician, who set an injured servant's broken leg in such a manner that it did not properly heal, and the servant thereafter engaged other physicians, who rebroke the leg, the master, though the new operation was not a success, was liable for the whole injury; the servant not being negligent in refusing to permit the first physician to rebreak the leg as he desired.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 143; Dec. Dig. ☞92(1).]

**8. APPEAL AND ERROR** ☞231(9)—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—NECESSITY.

Where the petition generally alleged the damages submitted in the charge, defendant's objection to the charge on damages, on the ground that it specified items not included in the petition, presents nothing for review, where defendant was requested by the court to make its objection specific.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ☞231(9); Pleading, Cent. Dig. § 1439; Trial, Cent. Dig. §§ 194, 195, 689, 690, 696.]

**9. MASTER AND SERVANT** ☞228(2)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Where a master violated Rev. St. Mo. 1909, § 7828, requiring the guarding of machinery and if impossible the posting of notices of danger, the fact that an employé, hurt while screwing oil cups on a wheel which was revolved by a shaft, had done the work for some months without injury, does not show him guilty of contributory negligence; the master having failed to comply with the statute.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 671; Dec. Dig. ☞228(2).]

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Action by Fred W. Hagen against the Atlas Portland Cement Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

George A. Mahan, of Hannibal, Mo. (Albert R. Smith and Dulany Mahan, both of Hannibal, Mo., on the brief), for plaintiff in error.

Ben E. Hulse, of Hannibal, Mo. (A. Clay Williams, of Pittsfield, Ill., and D. H. Eby, of Hannibal, Mo., on the brief), for defendant in error.

Before HOOK and SMITH, Circuit Judges, and REED, District Judge.

SMITH, Circuit Judge. The plaintiff in error, the Atlas Portland Cement Company, is a corporation organized under the laws of Pennsylvania. It was the defendant below, and is hereafter so styled here. It has for years been engaged in conducting a cement manufacturing plant at Ilasco, Ralls county, Mo. The defendant in error, the plaintiff below, and so hereafter styled here, was employed by the defendant in what was known as clinker mill No. 1, a part of plant 5, under a foreman. This mill had in it a line shaft extending from east to west about 100 to 125 feet long. This was 9 inches in diameter and was about 6 feet from the floor. Upon it were 16 wheels or pulleys, which by belts operated 16 Huntington mills, 8 on each side. The plaintiff

had charge of the 8 south mills. The shaft revolved 150 times a minute. The wheels or pulleys referred to were about 32 inches across the face and the one here in question was 4 feet in diameter.

This wheel, like the others, was so arranged that it could be detached from the power, so as to stop the Huntington mill to which it was attached. This was done by placing a collar in two pieces bolted around the shaft to the right of the wheel and placing a spider or clutch to the left of the wheel. This spider or clutch always revolved with the shaft, even when the pulleys or wheels were standing still. When it was desired to have the mill put in motion the spider or clutch was by a small wheel thrown against the large wheel or pulley on which the belt ran and seized a flange on the pulley or wheel with its four arms; and when it was desired to stop the mill by the same device the spider or clutch was withdrawn from the pulley wheel and it came to a stop. This pulley or wheel weighed about 1,800 pounds. There was upon it a hub, and projecting from it to the rim 12 spokes in pairs, or 6 pairs to the wheel. There were 4 grease cups to this wheel. They were attached to the hub between the spokes in pairs. The pairs were opposite each other on the hub and 12 to 15 inches apart. These grease cups had frequently to be screwed down, and it was a part of plaintiff's duty to do that. It is manifest that this could not be done from the left side of the wheel, as the revolving spider or clutch would cut off the operator's arm. It was therefore necessary to do this work wholly from the right side. If 2 of the grease cups stopped at the bottom and 2 at the top, it was necessary to screw the 2 at the bottom down from the floor and then climb upon an idler with one foot and upon another iron with the other and screw down those above the hub. There is a slight difference in the testimony as to how far the operator had to reach into the wheel to perform his duty, but he had to reach in from 8 to 10 inches from the collar to reach the first grease cup and 20 or 25 inches to reach the second.

On September 23, 1913, the plaintiff, having stopped the mills of which he had charge in pursuance of orders from his superior, attempted to screw down the grease cups, and succeeded in doing so at several of the mills, and screwed down the lower cups at mill No. 7. While he was attempting to screw down the upper cups at this mill, or at the corresponding point upon the shaft to this mill, and while the center of his body was, in the discharge of his duty, brought close to the line shaft, a projecting bolt or bolt head in the collar referred to caught in his jacket, threw him up over the line shaft and to the concrete floor north of it, and fractured his left leg. He brought this suit to recover damages. The case was tried and a verdict was returned in his favor, upon which judgment was rendered and the defendant sued out this writ of error.

[1, 2] The Revised Statutes of Missouri of 1909 contained the following provision:

"Sec. 7828. *Belting, etc., to be Guarded.*—The belting, shafting, machines, machinery, gearing and drums, in all manufacturing, mechanical and other establishments in this state, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible, then notice of

its danger shall be conspicuously posted in such establishments. (R. S. 1899, § 6433, amended, Laws 1909, p. 502.)"

The. amendment of 1909 inserted the words "machines" and "machinery."

The answer contains the statement that:

"Defendant further admits the allegation in the plaintiff's petition that the danger and peril connected with plaintiff's work was an obvious danger and peril."

The defendant called as a witness the assistant general superintendent of the Western district of the Atlas Portland Cement Company who testified: "It is a dangerous shaft." In view of this admission and testimony, corroborated as it is by all the evidence and contradicted by nothing, we have no hesitancy in reaching the conclusion that the machine in question was "dangerous to persons employed therein or thereabout."

When the question first came before this court, it held that, notwithstanding the Missouri statute referred to, the defenses of assumption of risk and contributory negligence were both available to the defendant in cases brought under that section. St. Louis Cordage Co. v. Miller, 61 C. C. A. 477, 126 Fed. 495, 63 L. R. A. 551; Glenmont Lumber Co. v. Roy, 61 C. C. A. 506, 126 Fed. 524; Federal Lead Co. v. Swyers, 88 C. C. A. 547, 161 Fed. 687; Mengel Box Co. v. Dulin, 98 C. C. A. 401, 174 Fed. 647. And this court held to the same effect as to a similar Colorado statute. Denver & R. G. R. Co. v. Norgate, 72 C. C. A. 365, 141 Fed. 247, 6 L. R. A. (N. S.) 981, 5 Ann. Cas. 448. And the same under a Wyoming statute. Maki v. Union Pacific Coal Co., 109 C. C. A. 221, 187 Fed. 389; Owl Creek Coal Co. v. Goleb, 127 C. C. A. 27, 210 Fed. 209.

That was the best judgment of this court after the most careful consideration, but there was a great conflict in the authorities, state and federal, on this question. See Welsh v. Barber Asphalt Paving Co., 93 C. C. A. 101, 167 Fed. 465, and Narramore v. Cleveland, C., C. & St. L. Ry. Co., 37 C. C. A. 499, 96 Fed. 298, 48 L. R. A. 68. This is not claimed to be an exhaustive review of all the cases bearing on this subject, but suffices to show the court's attitude at first upon the question.

In Columbia Box Co. v. Saucier, 129 C. C. A. 659, 213 Fed. 310, this court held that the Supreme Court of Missouri had so construed this particular statute that assumption of risk was not a defense, citing Durant v. Mining Co., 97 Mo. 62, 10 S. W. 484, Lore v. American Manufacturing Co., 160 Mo. 622, 61 S. W. 678, Butz v. Construction Co., 199 Mo. 286, 97 S. W. 897, Huss v. Heydt Bakery Co., 210 Mo. 44, 108 S. W. 63, and Simpson v. Witte Iron Works, 249 Mo. 376, 155 S. W. 810, and numerous decisions of the various Courts of Appeals of Missouri. This court held that the decisions of the Supreme Court of Missouri were binding upon this court.

In a quite able and ingenious argument the plaintiff in error here cites Patrum v. St. Louis & S. F. R. Co., 259 Mo. 109, 168 S. W. 622, as holding that a portion of the assumption of risk has become a form of contributory negligence. In view of the fact that contribu-

tory negligence always arises in tort, while assumption of risk always arises on contract, we cannot quite understand how this could be true. We can understand how the same evidence can make out a defense arising in tort and one on contract, but not how a defense arising on contract and abolished by law can become one arising in tort; but the Patrum Case was not under this or any similar statute, but was a common-law action against the railroad for negligence. In the statement of facts as prepared by the court it is said:

"The bone of contention in the case is as to whether the trainmen, the fellow servants of deceased, used ordinary care in making the coupling in which they were engaged when deceased lost his life."

That case, therefore, really involved nothing with reference to assumption of risk or contributory negligence. In that case the court quoted with approval from the Iowa Supreme Court the following:

"The term 'assumption of risk' has come to be used in a twofold sense. It is often said that an employé assumes the ordinary risk that is incident to his employment. This form of assumption of risk is often pleaded by defendants in personal injury cases, although it is quite unnecessary to do so. Assumption of risk in its true sense has reference to those risks arising out of the negligence of the master when such negligence is known to the employé, and the danger therefrom appreciated by him. In the first form herein indicated, a specific pleading of assumption of risk of the ordinary dangers incident to an employment is a mere amplification of the general denial, and adds nothing to it in the legal sense. In the second form herein indicated, it is an affirmative defense, and must be specifically pleaded as such."

The court said in that case:

"Under the doctrine found in the Missouri cases dealing with so-called assumption of risk, the employé 'does not assume the negligence of the master or that of a vice principal.' The moment negligence comes in at the door, it may well be said that the doctrine of assumption of risk goes out at the window."

It is clear that, if we accept the distinction made between the two alleged classes of assumption of risk, which upon authority we do, the first class is not a portion of the law of the assumption of risk at all in a practical sense, because it applies only when the master is not negligent, and where the master is not negligent there is no necessity for resorting to the defense of assumption of risk.

The second subdivision is then the only material one to consider, and it is to this the courts of Missouri have held there is no assumption of risk, because they have uniformly held that a violation of this statute is itself negligence. The case in question, not having arisen under this statute, is in no event so conclusive as to require us to modify our holding in Columbia Box Co. v. Saucier, 129 C. C. A. 659, 213 Fed. 310.

[3] It is assigned as error that the court failed to give to the jury the question as to whether the machine was so "placed as to be dangerous to persons employed upon the same while engaged in their ordinary duties"; but it has already been intimated that the pleadings and evidence were so clear upon this question that it was proper for the court to have positively instructed the jury that they should find

the machine was so dangerous, and its merely ignoring the question cannot be error.

[4, 5] It is contended that it is essential to plaintiff's right to recover that the jury find that the failure to guard and give notice caused the injuries. Of course this is true. But the court adopted as a part of the charge a portion of the opinion in Simpson v. Witte Iron Works, 249 Mo. 376, 155 S. W. 810, and expressly quoted:

"If these statutory directions are obeyed, then the employer is not liable for injuries occasioned by such agencies to such employés. If they are not obeyed, then the employer's disobedience is an act of negligence, and he is responsible for any and all *injuries directly caused by such failure*, saving the defense of contributory negligence."

In the absence of a request for a more detailed instruction, this was certainly sufficient. If the jury had first found that the machinery could be guarded, then the question could have been well taken from the jury; but the fact that the jury might have found for the plaintiff upon the absence of notice alone made an instruction upon the subject necessary. The court instructed the jury upon the law of contributory negligence substantially in the language used by this court in Motey v. Pickle Marble & Granite Co., 20 C. C. A. 366, 74 Fed. 155. The charge was full and ample on the subject.

[6] In its argument the defendant says:

"So that, under the Missouri doctrine as at present existing, the trial court in this case, in withdrawing assumption of the risk from the jury, should have done so with the qualification that if the plaintiff remained at work for the defendant with either actual or constructive knowledge of the condition of the machinery, to wit, that it was dangerous and not guarded, without the defendant having promised to remedy the same, then such assumption of the risk became contributory negligence."

Without again referring to what seems to us an inaccuracy of expression that assumption of risk, a defense arising on contract, became contributory negligence, a defense arising in tort, suffice it to say that, when an ample general instruction was given on contributory negligence, the failure of the defendant to ask the alleged additional one on the subject would prevent our consideration of whether, if so asked, it should have been given or not. In the case of Northern Central Coal Co. v. Hughes, 139 C. C. A. 619, 224 Fed. 57, cited by the defendant, the court gave correct general instructions, but the defendant asked a specific instruction upon what the court described as the crucial question in the case, but here there was no instruction asked at all except instructions to find for the defendant, and one other not on this subject. In this case there was not even an exception to the instruction on contributory negligence.

[7] The defendant asked the giving of an instruction that:

"The court instructs the jury that the defendant is not responsible for any injury to plaintiff caused by any act, operation, or conduct of plaintiff's physicians or surgeons."

This instruction was refused. It was erroneous upon its face, but especially so as shown by the record. The plaintiff testified, and the jury had a right to believe, that Dr. Chilton, the company's surgeon,

set his limb; that one day, when they were putting him upon a bed pan, he felt the bones slip. This was about three days after the injury. He called the attention of Dr. Chilton and the nurse to it, but the Doctor did not even make an examination. Plaintiff remained at the hospital six weeks, and was then taken home and remained there a week. At the end of five weeks the bandages were taken off. Dr. Chilton took him home and then pronounced the leg in good shape. In a day or two he came back and the leg was bent, and the next day he again called and wanted to break the leg again. After seven weeks of suffering with this broken leg, more than six weeks after it slipped and the doctor had been notified, and a bony union had been formed, he was justified in declining to let the same doctor break it again and operate further. Plaintiff simply told Dr. Chilton he could not break it again, and Dr. Chilton then turned the case over to Dr. Winn; but before this, at a conference of Dr. Chilton, Dr. Bounds, Dr. Winn, and other physicians, it was agreed by all of them that a second operation was necessary. The plaintiff then employed Dr. Bounds, a prominent surgeon, to perform a second operation, assisted by Drs. Schmidt, Hays, and Winn. These were all competent physicians and surgeons, and there is no evidence of negligence in their selection. From their testimony it appears that the union formed under Dr. Chilton was with the ends of the bones overlapping. The new operation was not a success, but there was no negligence upon plaintiff's part in refusing to let the same surgeon perform the second operation who had concededly failed in the first, perhaps without fault on his part, nor in the selection of the new ones; and if the defendant was liable at all, it was liable for the entire injury which plaintiff sustained as the result of its negligence in failing to comply with the statute.

[8] There is considerable criticism of the instructions on the measure of damages. The only exception made to this portion of the charge was:

"The Court: I will hear any exceptions to this charge.

"Mr. Mahan: * * * We except also to that part of the charge which gives the measure of damages, as charged by the court. * * *

"The Court: I think it is necessary, Mr. Mahan, under the practice, when you object to the court's charge as to damages, that you specify. If I am wrong in any particular, I want to correct it before the jury retires. You have objected generally to the charge I have given in reference to the amount of damages; now I would like for you to specify in what particular the court has not laid down the law as to the damages.

Mr. Mahan: I can only object in a general way as specifying the different items for which damages may be found, for the reason I understand those items are not specified in the plaintiff's petition."

Had the objections now made been then made, it is possible some of them would have been sustained; but the items were all mentioned in the petition, perhaps in several cases without sufficient details, and it was the duty of counsel, when called on by the court, to have pointed out in what respects the instruction was erroneous, and, having failed to do so, it cannot now complain.

[9] It is strenuously insisted that it conclusively appears that plaintiff was guilty of contributory negligence. This is based chiefly upon the fact that he had for a few months done the same work and not

been hurt, upon the fact that he used his left hand and not his right in doing the work, and upon a deduction from the evidence that he could have kept his body at a considerable distance from the bolt on which he was caught and from the shaft. The fact that he had done the work for a few months and not been injured, while admissible, is of comparatively slight weight. The statute of Missouri was enacted to protect employés from danger, not from the certainty of being hurt. It appears that one other man had been injured in a similar way, and the fact that for 400 or 500 times such operator escaped injury would not of itself conclusively show contributory negligence when one was hurt. It appears that the plaintiff was what was known as a left-handed man, and had always done the work with his left hand, and there is no evidence that he had previously been instructed to use his right hand. We think that there is quite as good reason to believe any one would have been hurt using his right hand as his left, and more reason to think that the plaintiff, who was more adept with his left hand than his right, would have been hurt by the use of his right rather than his left hand.

The deductions from the evidence referred to and relied upon are of such a character that we cannot follow them.

The judgment of the District Court is affirmed.

---

&sdot;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes