UNITED STATES ex rel. PIERCE v. CARGILL, Assessor, et al.

(District Court, E. D. Arkansas, W. D.   June 5, 1919.)

No. 6022.

1. TAXATION ⬥⟳40(1), 49—UNIFORMITY OF ASSESSMENT—CONSTITUTIONAL RE-
   QUIREMENTS.
       Under Const. Ark. art. 16, § 5, providing that "all property subject to
   taxation shall be taxed according to its value, that value to be ascertained
   in such manner as the General Assembly shall direct, making the same
   equal and uniform throughout the state" and the decisions of the state
   Supreme Court, the same basis of assessment must be followed by each
   county, and where a uniform system of assessment at one-half actual
   money value has been adopted and followed by direction of the state tax
   commission, one county cannot be compelled to assess at full valuation,
   although a state statute requires such assessment.
2. TAXATION ⬥⟳49—ASSESSMENT—CONSTITUTIONAL PROVISIONS.
       The provision of Const. Ark. art. 16, § 5, that "all property subject to
   taxation shall be taxed according to its value," as construed by the Su-
   preme Court of the state, does not require assessment at full value, but
   only makes such valuation the basis of assessment.
3. COURTS ⬥⟳366(1)—FEDERAL COURTS—CONSTRUCTION OF STATE STATUTES—
   FOLLOWING STATE DECISIONS.
       If by reason of an oversight a federal court has reached a different
   conclusion as to the construction of a state Constitution or statute from
   what had theretofore been decided by the highest court of the state, it is
   the duty of the national courts to follow the construction of the state court
   when the fact is called to their attention.
4. COURTS ⬥⟳366(6)—FEDERAL COURTS—CONSTRUCTION OF STATE STATUTES—
   FOLLOWING STATE DECISIONS.
       The rule of law that the latest decision of the highest court of a state
   controls as to the construction of a state statute is especially applicable to
   taxing statutes.
5. COURTS ⬥⟳365—FEDERAL COURTS—AUTHORITY OF STATE DECISIONS.
       The decision of the highest court of a state, construing its prior deci-
   sions, should be accepted by a federal court.

Petition for mandamus by the United States, on the relation of
Frank Pierce, against H. W. Cargill, Assessor, and others.   Denied.

Buzbee, Pugh & Harrison, of Little Rock, Ark., for relator.
J. F. Koone, of Clinton, Ark., and Bratton & Bratton, of Little
Rock, Ark., for respondents.

TRIEBER, District Judge.   The relator, at the October term, 1917,
recovered in this court a judgment against the county of Van Buren,
Ark., for several thousand dollars.   The judgment was based on
county warrants, issued in conformity with the laws of the state,
payable out of the general fund.   The debts for which these warrants
were issued were all contracted not earlier than 1914, and the war-
rants sued on were issued at different times since then, and pur-
chased by the relator after the decision in United States ex rel. v. Jim-
merson, 222 Fed. 489, 138 C. C. A. 85, L. R. A. 1918B, 1102, and
prior to the decision in State ex rel. v. Meek, 127 Ark. 349, 192 S.

⬥⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

W. 202, L. R. A. 1918F, 642. The county having no means with which to pay the judgment, and its property not being subject to execution, the relator filed a petition for mandamus against the assessing officers of the county, the respondents herein, to compel them to assess all the property in the county subject to taxation at its true money valuation. The petition alleges that the county has no money in the treasury wherewith to pay this judgment, or any part thereof, and that under the laws of the state its property is not subject to levy, seizure, or sale under execution; the laws of the state expressly prohibiting it. Section 3233, Kirby's Digest. It is further alleged that there is a large amount of floating warrants or scrip of the county, similar to that upon which the judgment is based, outstanding; that it is of depreciated market value, by reason of the fact that the outstanding warrants largely exceed the possible revenues of the county under the present system of assessment and taxation, the Constitution of the state, in force at the time the warrants were issued, and now in force, limiting the rate of taxation by counties, for general purposes, to 5 mills on the dollar; that the statutes of Arkansas make all warrants, regardless of the time of their issuance, receivable in payment of all county taxes and dues; that the assessor and board of equalization of the county have heretofore valued the property in the county for taxation at not exceeding 50 per cent. of its true valuation in money, and propose to continue to do so under future assessments, although required by the laws of the state to assess it at its full valuation, and unless the assessing officers of the county be required by the mandate of this court to discharge their legal duty, as required by the laws of the state, assessing the property at its true value in money, there will be no means whereby the relator can secure payment of its said judgment against the county.

The respondents filed a response, setting up:

"That the assessment of the property of said county by its assessor and his assistants at 50 per cent. of its true value, under the direction of the Arkansas tax commission, is and will be in accordance with assessments of other property in all other counties of the state; that the Arkansas tax commission has made an order fixing 50 per cent. of its true value as the proportionable valuation to be assessed on the taxable property throughout the state for purposes of taxation for the year 1919."

The cause was submitted on the pleadings and an agreed statement of facts, which is as follows:

"It is agreed between the parties hereto as follows: That the warrants on which the judgment, referred to in the petition, was rendered, were issued by the county of Van Buren, and purchased by the plaintiff, Frank Pierce, subsequent to the decision of the United States Circuit Court of Appeals for the Eighth Circuit in the case of United States ex rel. Fall City Construction Company v. Jimmerson, which was rendered April 14, 1915, and is reported in 222 Fed. 489, 138 C. C. A. 85, L. R. A. 1918B, 1102, and prior to the decision of the Supreme Court of Arkansas in the case of State ex rel. Nelson v. Meek, which was rendered February 5, 1917, reported in 127 Ark. 349, 192 S. W. 202, L. R. A. 1918F, 642. That at the time said warrants were issued by the county and purchased by the plaintiff, Frank Pierce, the decision of the United States Circuit Court of Appeals for the Eighth Circuit, in the case of United States ex rel. v. Jimmerson, was in full force and effect. That the property of Van

Buren county, and of other counties in the state, is now assessed, under direction of the state tax commission, at 50 per cent. of its value, and that the revenue derived by said assessment in Van Buren county is not sufficient to enable the county to pay the judgment in favor of plaintiff."

The question involved is not only of great importance, but is of a most delicate nature, involving as it does a conflict of views in the construction of the Constitution and statutes of the state of Arkansas, between the Supreme Court of the state and the United States Circuit Court of Appeals for this circuit, the court whose decisions, ordinarily, are conclusive on this court.

In United States ex rel. v. Jimmerson, 222 Fed. 489, 138 C. C. A. 85, L. R. A. 1918B, 1102, the United States Circuit Court of Appeals for this circuit held that, under the Constitution and laws of the state of Arkansas, the relator was, upon a state of facts identical with those in this case, entitled to a mandamus requiring the assessing officers of the county of Monroe, state of Arkansas, to assess all the property of that county, subject to taxation, at its full cash value, although the property of the other 74 counties of the state is assessed at 50 per cent. of its real value in money, by agreement and consent of all the assessing officers of the state, and by direction of the state tax commission, which, under the laws of the state, is authorized to advise and direct the assessing boards of the county in all matters relating to assessments for taxation, "to the end that all assessments of property shall be made in relative proportion to the just and true value thereof." This board also acts as a state board of equalization. Act May 12, 1909, p. 764. The opinion in that case was delivered on April 14, 1915. On February 5, 1917, the Supreme Court of Arkansas, in State ex rel. v. Meek, 127 Ark. 349, 192 S. W. 202, L. R. A. 1918F, 642, upon facts identical with those in the Jimmerson Case, unanimously held that the relator in that case was not entitled to a mandamus requiring the assessing officers of a county to make an assessment at a higher valuation than that made of the property of the other counties in the state, in pursuance of a well-defined policy of the state tax commission and the assessing officers of all the counties of the state. The court, after full consideration of the Jimmerson Case, expressly declined to follow the construction of the provisions of the Constitution and statutes of Arkansas by that court. This case was reaffirmed in Eureka Fire Hose Mfg. Co. v. Deffenbaugh, 129 Ark. 41, 195 S. W. 1076.

As the question of law involved depends solely upon the construction of the Constitution and statutes of the state of Arkansas, the decisions of the highest court of the state ordinarily control the national courts. But there are some well-defined exceptions to this rule. Counsel have cited a number of decisions of the Supreme Court and the inferior courts of the United States to sustain their respective contentions. Whether these authorities can be distinguished upon the facts, or in any wise reconciled, it is unnecessary to determine at this day, as in Kuhn v. Fairmont Coal Co., 215 U. S. 349, 360, 30 Sup. Ct. 140, 54 L. Ed. 228, that question is settled conclusively, so far as this court is concerned, although there are some exceptions to the

principles enunciated there, which, so far as applicable, will be referred to hereafter. In that case the court carefully reviewed its former decisions and summarized the law. We refer to the opinion in that case without quoting what is said.

Applying these rules of law applicable to the facts in the instant case, the first question to be determined is: Had the Supreme Court of the state construed that section of the Constitution of the state, prior to the time he purchased the warrants, upon which he has obtained the judgment in this cause, and was that construction against the contention of the relator? If it had, it is the duty of this as well as every other national court to follow that construction, rather than that of the Circuit Court of Appeals, if the latter court had either overlooked that fact or had erroneously construed the decision of the state Supreme Court.

On the part of the respondents it is claimed that long before that time the Supreme Court of the state had, in Ex parte Ft. Smith & Van Buren Bridge Co., 62 Ark. 461, 36 S. W. 1060 (opinion filed June 6, 1896), and Bank of Jonesboro v. Hampton, 92 Ark. 492, 123 S. W. 753 (opinion filed December 6, 1909), construed that section of the Constitution and the statutes of the state bearing on that question, and had held that, where all the property of a county is, in pursuance of a well-settled custom and practice, assessed at one-half of its full value, the property of every other corporation or citizen must be assessed at the same valuation, and, if erroneously assessed at its full value, must be equalized by reducing it to one-half thereof, in order to comply with the uniform taxation provision of the Constitution.

[1] This provision of the Constitution of the state is as follows:

"Art. 16, § 5. All property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the state."

It is further claimed by respondents, and it was so held in the Meek and Eureka Fire Hose Mfg. Co. Cases, that this construction applied as well to the entire state as to one county, for it was held that:

"To assess the property of one county at its full cash valuation, while the property in the other 74 counties of the state is assessed at half value, destroys the equality and uniformity of taxation throughout the state, as prescribed by this Constitutional provision."

Under the Constitution and laws of the state there is only one assessment made in each county, and that is the basis for taxation, not only for the county taxes, but also for all state, district, municipal, school, and road taxes. The statutes applicable are fully set out in the opinions in the Jimmerson and Meek Cases, and it is therefore unnecessary to insert them here. In the Jimmerson Case the court held that the opinion in Ex parte Ft. Smith & Van Buren Bridge Co., supra, was not applicable, and therefore not controlling. Bank of Jonesboro v. Hampton, supra, was not referred to by the court; its attention probably not having been called thereto by counsel, it was overlooked.

On the other hand, the Supreme Court of Arkansas in the Meek and Eureka Fire Hose Mfg. Co. Cases, before referred to, has expressly held that these two cases were in point and ruled the cases before it. Presumptively the Supreme Court of Arkansas knows the meaning of its own decisions, and unless it clearly appears that it misconstrued them, this court considers it its duty to accept its views. Excerpts from the opinion in the Jimmerson and Meek Cases show the reasons upon which each of these courts based its conclusions. The United States Circuit Court of Appeals in its opinion, treating the question as one never determined by the Supreme Court of the State, said:

"It is contended that this case is ruled by Ex parte Ft. Smith & Van Buren Bridge Co., 62 Ark. 461, 36 S. W. 1060. It is claimed that the precise question was decided by the Supreme Court of Arkansas in that case contrary to the contentions of the relator in this case. Let us see if this is so. The bridge company owned a bridge over and across the Arkansas river, one-half of which was in Sebastian and the other in Crawford county, Ark. The assessor assessed the half of the bridge in Crawford county for the year 1895 at $150,000. The bridge company asked that the assessment be reduced to $75,000. There was an appeal, and the case finally reached the Supreme Court. It was practically conceded that the sum of $150,000 would not have been in excess of a fair valuation of the half of the bridge assessed in Crawford county. The Supreme Court decided: 'As the assessment of the real property of Crawford county was purposely equalized at one-half of its market value, so the valuation of one-half of the bridge of appellant should have been reduced by the county court to $75,000, as the owner requested; that being fully as much as or more than one-half of its market value.' What the court decided was that, if the assessor in any particular county uniformly assessed property at 50 cents on the dollar of its true valuation, he could not single out a bridge company, or some particular taxpayer, and assess its or his property at its full value. Whether the assessor of Crawford county had a right to assess property at 50 per cent. of its value was not in question."

[2] The Supreme Court of the state, in refusing to follow this construction, held that the Constitution only required uniform taxation, but does not require the assessment of property at full valuation. It said:

"The only command embraced in this provision [article 16, § 5, of the Constitution] is that the property shall be taxed 'according to value'; that is to say, on the valuation basis, and not on some other basis. * * * There is no doubt of the power of the Legislature to provide for an assessment based on the full money valuation of property, not that the Legislature had so provided in the statutes which have been enacted since the adoption of the present Constitution; but it is equally clear that the Constitution itself does not compel an assessment according to full value, and it does, in fact, leave that matter entirely to the lawmakers. That is the effect of our previous decisions on that subject. In Bank of Jonesboro v. Hampton, 92 Ark. 492 [123 S. W. 753], we said: 'It is true the Constitution provides that all property subject to taxation shall be taxed according to its value, but this is done when the valuation is equalized with other property of the same kind in the county.' "

After a full review of the Constitution and statutes of the state, and its former opinions on the subject of assessments at full value, it was held:

"The only two specific mandates contained in the Constitution are, one that a valuation basis must be adopted, and the other that in fixing the value the same shall be 'equal and uniform throughout the state.'"

In discussing the acts of the Legislature defining the duties of the assessors and the state tax commission, it held:

"It does not require complete attainment of the full valuation, nor absolute uniformity, but it recognizes the fact that valuations are merely relative, and that uniformity is only an approximation, and that perfection in neither direction can be attained. It is readily seen, however, that uniformity is the dominant idea in the performance of the duties of the tax commission."

It then concludes its opinion by holding:

"We are of the opinion that the answer of the defendants is a sufficient one, and that they are compelled by the plain mandate of the Constitution to assess property in the county in conformity with the valuations placed on such property in other counties, regardless of the fact that it calls for an assessment at less than full value. Any other view of the matter would work an injustice to the taxpayers of that particular county, and that, too, in manifest violation of the constitutional guaranty."

To the same effect is Greene v. Louisville & Interurban R. R., 244 U. S. 499, 516, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88.

That the Legislature recognized that uniformity is more essential than full valuation is shown by the provisions of Act 257, Acts 1909, pp. 764, 769, 772 (sections 11 and 12), creating the state tax commission, cited in the opinion in the Meek Case and also by section 7004, Kirby's Digest. The latter, in prescribing the duties and powers of the county boards of equalization, provides:

"In the equalization of real property not previously entered for taxation on the tax books as then listed, it shall raise the valuation of such tracts and lots of real property as in the opinion of the county board has been returned below their value in money, to such price or sum as it may find to be the true value thereof, agreeably to the rules prescribed by this chapter for the valuation of real property, or may reduce the valuation of such tracts or lots as in the opinion of the board have been returned above their true value, as compared with the average valuation of the real property of such county," etc.

The effect of the decision of the Supreme Court of Arkansas in those cases is that, if the statute requiring the assessment for taxation of all property at its full value in money, destroys the uniformity of taxation throughout the state, it is unconstitutional and must give way to the plain commands of the Constitution.

An exception to the principles announced in Kuhn v. Fairmont Coal Co. is: If a state statute, previously sustained by the national courts, is by the highest court of that state held to be unconstitutional, the national courts must follow the latest decision, provided, of course, rights have not been acquired under former decisions. Therefore, if the Arkansas statute, requiring the assessment of property at full value has, by reason of the established practice and agreement of all the assessing officers of the state, including the state tax commission, been disregarded and all the property assessed at only half its value, and by reason thereof the statute has by the highest court of the state been declared unconstitutional, in so far as it requires the assessments to be at full valuation, when not applied to all the prop-

erty in all the counties of the state, that determination is conclusive on the national courts, regardless of the fact whether it was so declared before or after the trial court had passed on it, provided the rights of the complainants had not become vested before the last decision, as is claimed by relator to be the fact in the instant case. In Metzger Motor Car Co. v. Parrott, 233 U. S. 36, 42, 34 Sup. Ct. 575, 576 (58 L. Ed. 837), a state statute, which had not been construed by the highest court of the state at the time the District Court of the United States decided the case, was held to be constitutional by that court. While pending in the Supreme Court on error to the District Court, the highest court of the state held the statute to be unconstitutional under the Constitution of the state. The Supreme Court, in reversing the judgment of the lower court, said:

"We cannot now treat as existing a statute which the court of last resort of the state declares cannot be enforced compatibly with the state Constitution."

In Oakes v. Mase, 165 U. S. 363, 17 Sup. Ct. 345, 41 L. Ed. 746, the Supreme Court of the state of Montana declared a statute of that state unconstitutional under the state Constitution, while the case was pending in the Supreme Court of the United States, on error to a United States Circuit Court of Appeals, which had held the statute involved constitutional. In reversing the Circuit Court of Appeals the Supreme Court said:

"As this ruling of the court of last resort of the state of Montana, interpreting the Constitution and laws of that state, is binding here, the sole ground upon which the Circuit Court of Appeals rested its judgment is destroyed."

In Wade v. Travis County, 174 U. S. 499, 507, 509, 19 Sup. Ct. 715, 43 L. Ed. 1060, the Circuit Court had declared certain bonds of defendant county void in conformity with a decision of the Supreme Court of the state, rendered before that time. On error the United States Circuit Court of Appeals affirmed the judgment of the Circuit Court. 81 Fed. 742, 26 C. C. A. 589. The Supreme Court granted a writ of certiorari. While the cause was pending in the Supreme Court of the United States the Supreme Court of Texas in Mitchell County v. Bank of Paducah, 91 Tex. 361, 43 S. W. 880, held that such bonds were valid. The Supreme Court of the United States followed the last decision, reversing the judgment of the lower courts. The court in its opinion said:

"While, if this case had been brought before this court before the decision in the Mitchell County Case, we might have taken the view that was taken by the courts below, treating the question as one hitherto unsettled in that state, we find ourselves relieved of any embarrassment by the decision in the Mitchell County Case, which manifestly applies to this case and requires a reversal of their judgment."

The court then proceeded:

"But assuming that the later case was intended to overrule the prior ones, and to lay down a different rule upon the subject, our conclusion would not be different"

—citing numerous authorities, and distinguishing those cases in which parties, in reliance of a decision of the highest court of the state, entered into new contracts or bought bonds issued under the same statute. The same rule has been applied in the construction of statutes now involving their constitutionality.

To the same effect are the rulings of the Circuit Court of Appeals of this circuit. In St. Louis Cordage Co. v. Miller, 126 Fed. 495, 61 C. C. A. 477, 63 L. R. A. 551, the United States Circuit Court of Appeals, for this circuit, construing a Missouri statute, requiring gearing and belting in factories to be guarded, held that that statute did not abolish the rule of assumption of risk. At that time the statute had not been construed by the Supreme Court of the state. The same question came again before that court in Columbia Box Co. v. Saucier, 213 Fed. 31, 129 C. C. A. 656, and Atlas Portland Cement Co. v. Hagen, 233 Fed. 24, 147 C. C. A. 94. In the meantime the Supreme Court of Missouri had construed the statute, holding that it did abolish the rule of assumption of risk. Thereupon the Circuit Court of Appeals refused to adhere to its former decision in the Miller Case, and other cases following it, holding that it was its duty to follow the construction of the statute by the state Supreme Court. The same principle was followed in Sidey v. City of Marceline, 237 Fed. 168, 170, 150 C. C. A. 314, and St. Louis & S. F. R. R. Co. v. Quinette, 251 Fed. 773, 164 C. C. A. 7.

In Western Union Telegraph Co. v. Poe (C. C.) 61 Fed. 449, and Adams Express Co. v. Poe (C. C.) 61 Fed. 470, Judge Taft, on demurrer to the bills of complaint in those cases, held a taxing act of the state of Ohio unconstitutional, as being in violation of the Constitution of that state, and granted a temporary injunction. Later, upon failure of the defendant to answer, decrees pro confesso were taken. Before final decrees were entered the Supreme Court of Ohio, in State v. Jones, 51 Ohio St. 492, 37 N. E. 945, held that the act was constitutional. Thereupon the defendant moved the court to set aside the decrees pro confesso, dissolve the temporary injunctions, and grant a rehearing on the demurrers. Judge Taft sustained these motions, holding that it was the duty of the Circuit Court to reverse its former ruling in deference to the decision of the Supreme Court of the state. Western Union Telegraph Co. v. Poe (C. C.) 64 Fed. 9. Upon appeal this ruling was affirmed by the United States Circuit Court of Appeals for the Sixth Circuit, Sanford v. Poe, 69 Fed. 546, 16 C. C. A. 305, 60 L. R. A. 641, the late Justice Lurton, then Circuit Judge, delivering the unanimous opinion of that court. On certiorari the Supreme Court affirmed the rulings of the lower courts, sub nomine Adams Express Co. v. Ohio, 165 U. S. 194, 219, 17 Sup. Ct. 305, 41 L. Ed. 683. While four of the Justices dissented in that case, they placed their dissent solely upon the ground that the statute was in violation of the national Constitution, but that part of the majority opinion, which held the construction of the Ohio Constitution by its court of last resort, although rendered after the cause in the national court had been instituted, should control, was not questioned by any of the dissenting Justices. See, also, Northern Pacific

Ry. Co. v. Meese, 239 U. S. 614, 619, 36 Sup. Ct. 223, 60 L. Ed. 467, and American Sugar Ref. Co. v. New Orleans, 119 Fed. 691, 55 C. C. A. 328.

[3] If by reason of an oversight the court reached a different conclusion from what had theretofore been decided by the highest court of the state, it is the duty of the national courts to follow the construction of the state court of last resort, when that fact is called to their attention.

A case directly in point is Fairfield v. County of Gallatin, 100 U. S. 47, 52, 55, 25 L. Ed. 544. In Town of Concord v. Portsmouth Savings Bank, 92 U. S. 625, 23 L. Ed. 628, the court had held bonds issued by a municipality of Illinois void, as not having been issued in conformity with the provisions of the Constitution and statutes of that state. Prior thereto the Supreme Court of. Illinois had held bonds issued in the same manner as were those in suit in the Town of Concord Case to be valid obligations under the same provision of the Constitution and statutes of the state under which the bonds in the Fairfield Case were issued. But that decision of the Supreme Court was not called to the attention of the Supreme Court of the United States, and was overlooked by that court. The Circuit Court in the Fairfield Case, following the decision of the Supreme Court in the Town of Concord Case, held the bonds of Gallatin county void. The Supreme Court reversed the case, and after referring to the decision of the Supreme Court of Illinois, which it had overlooked in the Town of Concord Case, held:

"In view of all this, ought this court to adhere to the construction we gave to the state Constitution in ignorance of the fact that the Supreme Court * * * had previously construed it in a different manner?"

After referring to numerous prior decisions, it answers this query by holding:

"We are not constrained to refuse following the decision of the state court in order to save rights acquired on the faith of our ruling in Town of Concord v. Portsmouth Savings Bank. * * * In such a case, we think it our duty to follow the state courts, and adopt as the true construction that which those courts have declared."

[4] The rule of law, that the latest decision of the highest court of the state controls, is especially applicable to taxing statutes. Games v. Dunn, 39 U. S. (14 Pet.) 322, 328, 10 L. Ed. 476; State Railroad Tax Cases, 92 U. S. 575, 618, 23 L. Ed. 663; Stutsman v. Wallace, 142 U. S. 293, 306, 12 Sup. Ct. 227, 35 L. Ed. 1018; Pittsburg, etc., Ry. Co. v. Backus, 154 U. S. 421, 425, 14 Sup. Ct. 1114, 38 L. Ed. 1031. For this court to refuse to follow the decisions of the Supreme Court of Arkansas would result in granting to noncitizens of the state, who can maintain actions in the national courts, benefits not possessed by citizens of the state, and relief denied to the latter. This should be avoided, if at all possible. Smith Purifier Co. v. McGroarty, 136 U. S. 237, 241, 10 Sup. Ct. 1017, 1019 (34 L. Ed. 346), where it was said:

"It would be an extraordinary result, if the courts of the United States, in exercising the jurisdiction conferred upon them with a view to secure the

rights of citizens, residing in different states, should hold such a conveyance to be valid against citizens of other states as the Supreme Court of Ohio holds to be void as against its own citizens." Paterlini v. Memorial Hospital, 247 Fed. 639, 160 C. C. A. 49.

Mandamus is a writ of discretion. Duncan Townsite v. Lane, 245 U. S. 308, 38 Sup. Ct. 99, 62 L. Ed. 309; United States ex rel. v. Lane, 249 U. S. 367, 39 Sup. Ct. 293, 63 L. Ed. 650.

Tax titles for nonpayment of taxes on such assessments would depend on the validity of these assessments, and they would, in almost all instances, be determined by the state courts, and when so decided would become a rule of property binding on the national courts.

[5] Here we are confronted with a decision of the highest court of the state, expressly holding that, years before this cause of action arose, it had in two well-considered cases construed its Constitution and statutes, holding that the uniformity clause of its Constitution controls the full valuation assessment statute, and, if conflicting, the latter must give way. The same conclusion has been reached by Judge Youmans in a cause in the Western District of Arkansas.

For the reasons stated, the court feels bound to follow the construction of the Constitution and statutes of the state by its highest court, and deny the petition for a mandamus.